**In re Karen KIBBE, Debtor.**

**No. 06–10012–MWV.**

United States Bankruptcy Court,
D. New Hampshire.

April 14, 2006.

**412**

Michael R. Kainen, Esq., Michael R. Kainen, Attorney at Law, PC, White River Junction, VT, for Debtor.

Lawrence P. Sumski, Esq., Manchester, NH, Chapter 13 Trustee.

## MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The issue presented in this Chapter 13 case, which is governed by the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), is whether a below median debtor's "projected disposable income," as that term is used in section 1325(b)(1)(B)[1] is determined from Form B22C or whether "projected disposable income" is determined by reference to Schedules I and J, when the debtor's "current monthly income," as defined by section 101(10A), is significantly lower than the debtor's actual current income. The Trustee filed a Motion to Dismiss the Debtor's bankruptcy case and the Debtor objected. The Court held a hearing on March 17, 2006, after which the Court took the matter under advisement. This being an issue of first impression in the First Circuit, the Court accepted supplemental memoranda of law from the parties.[2]

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28

---

1. All statutory section references herein are to the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. § 101, *et seq.*

2. Despite the Court's request that in their memoranda the parties address the applicability to this case of section 1325(a)(3)'s good faith requirement, in light of the Court's holding, a discussion of good faith is unnecessary.

U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### DISCUSSION

The Debtor filed her bankruptcy petition and Chapter 13 plan on January 5, 2006. Included in her petition was Form B22C, entitled "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." "Current monthly income" is a defined term that is the average monthly income that a debtor earns in the six months immediately prepetition. *See* 11 U.S.C. § 101(10A) (2005). In this case, the Debtor's "current monthly income," as reported on Form B22C, is $1,068.50. On Form B22C, "current monthly income" is multiplied by twelve in order to determine whether the to-be-debtor's annualized income is above or below the applicable median income for that debtor's geographic area. The Debtor's calculation on her Form B22C reveals that this is a below median case. This yields two results: the Debtor's commitment period, i.e., length of plan, is three years; and section 1325(b)(3) is *not* used to determine the Debtor's disposable income.[3]

As stated above, the six months prior to bankruptcy are the only relevant months in determining "current monthly income." In this case, the Debtor was underemployed (not voluntarily) for most of those six months, but shortly before filing she began a higher paying job. When the six months are averaged, the Debtor's "current monthly income" is $1,068.50, despite the fact that the Debtor's Schedule I reports an actual monthly income of $5,027.

Strangely, the Debtor's actual current monthly income is $5,027 while her "current monthly income" from Form B22C is $1,068.50. These conflicting figures set the stage for the dispute over how to determine the amount of disposable income, if any, that the Debtor is required to pay into the plan each month. The answer—and the confusion—lies in section 1325(b). Thus, the starting point is section 1325(b)(1) and (2), which provides:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependant child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A)(i) for the maintenance or support of the debtor or a dependant of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed[.]

11 U.S.C. § 1325(b)(1) and (2)(2005).

■ The Debtor argues that section 1325(b) does not require her to pay any

---

3. Section 1325(b)(3) is used to determine disposable income in *above* median cases.

income to her unsecured creditors.[4] Her argument is as follows: Section 1325(b)(1)(B) requires a debtor to pay all "projected disposable income" to unsecured creditors through the plan. Section 1325(b)(2) defines "disposable income" as current monthly income less expenses. "Current monthly income" on the Debtor's Form B22C is $1,068.50. The Debtor's monthly expenses, as reported on Schedule J, total $2,645.00.[5] Subtracting the Debtor's expenses from her "current monthly income" yields no "disposable income," as that term is defined in section 1325(b)(2). Next, the Debtor reads section 1325(b)(2)'s "disposable income" coextensively with section 1325(b)(1)(B)'s "projected disposable income." Since the Debtor has no "disposable income" per section 1325(b)(2), she therefore has no "projected disposable income" under section 1325(b)(1)(B), the result being that section 1325(b)(1)(B) requires nothing of the Debtor. The Court disagrees.

Although Congress defines the term "disposable income" in section 1325(b)(2) with reference to "current monthly income" (an average of a debtor's income for the six months prior to bankruptcy), Congress uses the term *"projected* disposable income" in section 1325(b)(1)(B). (Emphasis added.) Congress did not change section 1325(b)(1)(B)'s requirement that all "projected disposable income" must be paid to unsecured creditors.[6] Had Congress intended "projected disposable income" to be synonymous with section 1325(b)(2)'s "disposable income" Congress could have deleted the word "projected"

from section 1325(b)(1)(B) or defined "projected gross income," rather than only "disposable income," in section 1325(b)(2). *See In re Jass,* 340 B.R. 411, 417–18 (Bankr.D.Utah 2006). As Congress did neither, the Court must give effect to the word "projected." "To require all debtors to propose plans paying the number resulting from Form B22C would essentially ignore the word 'projected' and give meaning only to the term 'disposable income.' The only way for the word 'projected' to have independent significance is if the word modifies the term 'disposable income.'" *Id.* at 416–17. Recognizing that the term "projected disposable income" is forward-looking, the Court agrees with the conclusion of *In re Hardacre* that "'projected disposable income' must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income." *In re Hardacre,* 338 B.R. 718, 722 (Bankr.N.D.Texas 2006). Thus, disposable income in the instant case is determined by reference to Schedules I and J. To conclude otherwise would invite "anomalous results" when a debtor has had a change of circumstances during the six months immediately prepetition. *See id.*

To illustrate, under the Debtor's proffered construction, a debtor could be underemployed or unemployed for five months, begin a well-paying job and file for bankruptcy protection a month later. Going forward, the debtor would have substantial income. However, the debtor could avoid paying any money to unse-

---

**4.** Although the Debtor argues that she is not obligated to make any payments to unsecured creditors, the Debtor's plan voluntarily provides for a dividend of fourteen percent to those creditors.

**5.** Again, if this were an above median case, the Debtor's expenses would be calculated pursuant to section 1325(b)(3). This being a

below median case, though, the Court can only conclude that the Debtor's expenses are to be calculated by reference to Schedule J, as was the practice prior to BAPCPA.

**6.** In fact, BAPCPA added the words "to unsecured creditors" to that subsection.

cured creditors despite having the ability to do so because the debtor's actual disposable income would be irrelevant. Conversely, a debtor who switches from a high paying job to a low paying job immediately prior to filing her petition would have significant "disposable income" on Form B22C but not during the term of the plan, i.e., in reality. Section 1325(b)(1)(B) would nonetheless require the debtor to pay an amount of disposable income that the debtor no longer has. Such debtors would be unable to confirm a workable plan.[7] These scenarios—the first being the actual facts of this case—illustrate the importance of the word "projected" because the commitment period, not the six months prepetition, is the relevant time period for determining how much *actual* disposable income a debtor will be able to contribute throughout the duration of the plan.

Additionally, as discussed in *In re Hardacre*, other language of section 1325(b)(1) bolsters the Court's conclusion. First, under 1325(b)(1) a debtor must contribute all "projected disposable income to be received in the applicable commitment period." "If Congress had intended that projected disposable income for plan purposes be based solely on prepetition average income, this language would be superfluous." *Id.* at 723. This phrase is entirely forward-looking, requiring that the plan provide all disposable income that the debtor actually expects to receive during the three year plan. Second, section 1325(b)(1) directs this Court to evaluate whether a debtor is contributing all of her projected gross income "as of the effective date of the plan." "This language suggests that the debtor's income 'as of the effective date of the plan' is the one that is relevant to the calculation of 'projected disposable income,' not her income prior to filing. Consequently, 'projected disposable income' under section 1325(b)(1)(B) necessarily refers to income that the debtor reasonably expects to receive during the term of her plan." *Id.*

### CONCLUSION

In a below median case, "projected disposable income," as used in section 1325(b)(1)(B), is based on a debtor's current income and expenses as reflected on Schedules I and J. The Court finds that the Debtor's plan does not comply with section 1325(b)(1) and, therefore, confirmation is denied. As for the Trustee's motion to dismiss, the Court will treat his motion as a motion in opposition to plan confirmation, as his supplemental memorandum is styled and it is a trustee's objection to plan confirmation that triggers analysis under section 1325(b). Thus, to the extent that the Trustee seeks to dismiss the bankruptcy case, his motion is denied. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

### *ORDER*

In connection with this Court's memorandum opinion of even date herewith and this matter being a core proceeding in accordance with 28 U.S.C. § 157(b) as to

---

7. *In re Jass* is such a case. In *Jass*, the debtors' financial situation during the bulk of the six month prepetition period was better than their financial situation at the time of bankruptcy (and during the term of the plan) as reported on Schedules I and J. Thus, Form B22C reflected a financial situation that was no longer reality. The court stated, "[i]f § 1325(b)(1)(B) required a debtor to always pay the calculated disposable income amount resulting from Form B22C, the Court would essentially foreclose the potential for bankruptcy relief from a group of chapter 13 debtors who are otherwise eligible for relief." *In re Jass*, 340 B.R., at 417–18.

which this Court has jurisdiction of the subject matter and the parties,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. The Debtor's Chapter 13 plan does not comply with section 1325(b)(1) and, therefore, confirmation is denied; and

2. The Trustee's motion to dismiss is denied.