**In re Thelma E. DANIEL, Debtor.**

No. 06–20714.

United States Bankruptcy Court, D. Kansas.

Dec. 15, 2006.

David A. Reed, Kansas City, KS, for Debtor.

## MEMORANDUM AND ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S PLAN

Following oral argument on November 15, 2006, the Court took under advisement the Chapter 13 Trustee's objection to Debtor's plan that proposes to be completed in 18 months without making payments to unsecured creditors. The Chapter 13 Trustee, William H. Griffin (hereafter Trustee), appears by Dianna J. Lord. Debtor, Thelma E. Daniel (hereafter Debtor), appears by David A. Reed. There are no other appearances. The Court has jurisdiction.[1] Having considered the arguments of the parties, the Court is now ready to rule and, for the reasons stated below, sustains the Trustee's objection.

### FACTS.

The relevant facts are undisputed and are based upon the schedules and other filings. Debtor's proposed plan provides for payments of $305 per month. These payments shall be used for the payment of attorney fees of $2,500 at the rate of $125 per month and payment of a secured car loan of $2,404.95 at the rate of $155 per month, with a discount rate of 9.25%. The plan provides a dividend of 0% to unsecured creditors. The Trustee objects to the plan because it completes in 18 months and asserts the plan should be amended so it will complete in no less than 36 months.

The Debtor's schedules evidence the following regarding her income, expenses, and debts. Form B22C, Part I, Report of Income, shows $2,738 monthly income, which is below the median. Because Debtor is below-median income, Parts III through VI are not completed.

Schedule D, Secured Claims, shows only one claim, $2,404.95 owed to Empire on a purchase money loan secured by a 1992 Buick. Schedule F, Unsecured Claims, shows a total of $16,229.67. Schedule I, Current Income of Individual Debtor(s), shows monthly income of $2,443.00. Schedule J, Current Expenditures of Individual Debtor(s), shows total monthly expenses of $2,138 and net monthly income of $305.

### POSITIONS OF THE PARTIES.

The Trustee objected to Debtor's plan, so the Court may not confirm the plan unless the conditions of §§ 1325(b)(1)(A) or

---

1. This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Confirmation of a plan is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(L). There is no objection to venue or jurisdiction over the parties.

(B)[2] are satisfied. Those subsections provide:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

It is the Trustee's position that the plan does not satisfy § 1325(b)(1)(B) because it does not run for 36 months, which is the applicable commitment period for below-median income debtors, as defined by § 1325(b)(4)(A). The Trustee contends the plan should be amended to provide for monthly payments of $305 for the entire 36 month period, which would result in a dividend to unsecured creditors.

The Debtor responds that for a below-median income debtor, a Chapter 13 plan may run for less than three years without paying 100% of allowed unsecured claims. Debtor argues that the phrase "applicable commitment period" referred to in § 1325(b)(4)(A) is a multiplier which requires only a certain dividend to unsecured creditors, rather than a temporal requirement specifying a minimum number of payments. Debtor then asserts that be-

cause she has zero disposable income according to Form B22C, a plan of 36 months is pointless, because payments of $0.00 per month times 36 months generates no income for the plan, so a shorter plan period is permitted.

**ANALYSIS.**

**Controlling Statutes and Applicable Rules.**

Debtor's position, which relies upon Official Form B22C to establish that her disposable income is zero, requires the Court to carefully examine the Code as amended by BAPCPA[3] and the implementing Rules and Official Forms. In accord with § 1325(b)(1)(B), quoted above, Debtor's plan may be confirmed over the objection of the Trustee only if the plan provides that all of the debtor's "projected disposable income" to be received during the "applicable commitment period" will be dedicated to the payment of unsecured creditors.

The term "applicable commitment period" is defined by § 1325(b)(4), as follows:

(4) For purposes of this subsection, the 'applicable commitment period'–

(A) subject to subparagraph (B), shall be—

(i) 3 years; or

(ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than— [applicable median income for the appropriate family size]; and

(B) may be less than 3 or 5 years, whichever is applicable under subpara-

---

**2.** This voluntary Chapter 13 case was filed on May 5, 2006, after the October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C.A. §§ 101–1330 (West 2004 & Supp.

2006), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to the current Fed. R. Bankr. P., unless otherwise specified.

**3.** Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

graph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

The Trustee submits that in this case the "applicable commitment period" as determined by the foregoing subsection is three years, since the Debtor is below-median income and the plan does not propose to pay unsecured creditors in full over less than three years. The Debtor challenges this conclusion based only upon the premise that she has no projected disposable income so a three year plan is pointless.

The Code does not define "projected disposable income." The meaning of the word "projected" in light of the new definition of "disposable income" is not without difficulty.[4] In this case, however, neither of the parties contend that projected disposable income is different from disposable income as defined by the Code. The Court therefore finds for this case "projected disposable income" is the same as the "disposable income."

The Code does define "disposable income" for purposes of § 1325(b)(1), the condition for confirmation after objection by the Trustee. Subsection 1325(b)(2) provides as follows:

(2) For purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child ...) less amounts reasonably necessary to be expended—

(A)(i) for the maintenance or support of the debtor ... that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions ...; and—

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

The calculation of disposable income therefore starts with current monthly income. "Current monthly income (CMI)" is defined (after BAPCPA) by § 101(10A), which provides in part as follows:

(10A) The term "current monthly income"–

(A) means the average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income, derived during the 6–month period ending on—

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

(B) includes any amount paid by any entity other than the debtor ..., on a regular basis for the household expenses of the debtor. . . .

The definition uses historical data solely from the six months before filing.

A statement of CMI is prepared and filed by the debtor. Subsections 521(a)(1)(B)(ii) and (v) require all debtors, unless the court orders otherwise, to file a "schedule of current income and current expenditures" and "a statement of the amount of monthly net income, itemized to

---

**4.** See e.g., In re Hardacre, 338 B.R. 718 (Bankr.N.D.Tex.2006); In re Kibbe, 342 B.R. 411 (Bankr.D.N.H.2006).

show how the amount is calculated." The first of these requirements was enacted by the Reform Act of 1978. The information is provided in Official Form 6, using Schedules I and J.

The second requirement, the filing of a statement of monthly net income, was added by BAPCPA and applies to debtors filing after October 17, 2005. One commentator opines that "the phrase 'monthly net income' [in § 521(a)(1)(B)(v) ], which is not defined or used elsewhere in the Code, probably means 'current monthly income,'" the income calculated in accord with the formula of § 101(10A).[5] The commentator further states, "It is likely that the Judicial Conference will promulgate an Official Form for this purpose."[6] As predicted, Interim Rule 1007(b)(4), (5), and (6)[7] require that individual debtors "shall file a statement of current monthly income, prepared as prescribed by the appropriate Official Form...." The new forms are Official Forms B22A (Chapter 7), B22B (Chapter 11), and B22C (Chapter 13), which provide for the reporting of

CMI according to the § 101(10A) formula and related matters.[8] Each form states that it must be completed by every individual debtor in addition to Schedules I and J. There is no official form for the reporting of "monthly net income." The Court therefore finds that the completion and filing of Official Form B22C, Part I by a Chapter 13 debtor satisfies the requirement to report "current net income" stated in § 521(a)(1)(B)(v).

Calculation of disposable income, as defined by § 1325(b)(2), begins with the CMI, as defined by § 101(10A). From this amount (excluding certain dependant child related income) are subtracted amounts reasonably necessary for the maintenance or support of the debtor or a dependent, domestic support obligations, and charitable contributions. For above-median income debtors, § 1325(b)(3) provides the subtracted amounts are determined by the formula stated in §§ 707(b)(2)(A) and (B), the abuse provisions.[9] For these higher income debtors,

---

5. 4 *Collier on Bankruptcy* ¶ 521.09C (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev.2006) (noting that § 707(b)(2)(C) requires a Chapter 7 debtor to file as a part of the schedule of current income and expenditures required by § 521, a statement of the debtor's current monthly income and calculations which determine whether a presumption of abuse arises and that current monthly income is also relevant in Chapter 11 and Chapter 13 cases).

6. *Id.*

7. Fed. R. Bankr.P Interim 1007. The interim bankruptcy rules implementing BAPCPA are hereafter referred to as Interim Rules.

8. The 2005 Committee Note to Form B22A state in part as follows:

   Among the changes introduced by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 are interlocking provisions defining "current monthly income" and establishing a means test to

determine whether relief under Chapter 7 should be presumed abusive. Current monthly income ("CMI") is defined in section 101(10A) of the Code, and that means test is set out in § 707(b)(2). These provisions have a variety of applications....

To provide for the reporting and calculation of CMI and for the completion of the means test where required, three separate official forms have been created-one for Chapter 7, one for Chapter 11, and one for Chapters 13.

9. 11 U.S.C. 1325(b)(3) provides:

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B) in the case of the debtor in a household of 2, 3, or 4 individuals, the highest

the foregoing calculations are facilitated by Form B22C. Part III of the form, "Application of § 1325(B)(3)(sic) for Determining Disposable Income," that compares CMI with the applicable median family income. If CMI is above-median, the debtor is directed to check a box at the top of the form stating that "Disposable income is determined under § 1325(b)(3)" and to complete the remaining portions of the form, which calculate the deductions allowed under § 707(b)(2) and disposable income under § 1325(b)(2).

On the other hand, if the debtor's CMI is below-median, the Code provides no formula to supplement the § 1325(b)(2) definition for calculation of the allowed expenditures similar to that for above-median income debtors. The Code limits the § 1325(b)(3) formula to above-median income debtors. The Rules and Official Forms reflect the Code's limitation of the § 1325(b)(3) means test deductions to above-median income debtors. Interim Rule 1007(b)(6) states,

> (6) A debtor in a chapter 13 case shall file a statement of current monthly income, prepared as prescribed by the appropriate Official Form, and, if the debtor has current monthly income greater than the median family income for the applicable state and family size, a calculation of disposable income in accordance with § 1325(b)(3), prepared as prescribed by the appropriate Official Form.

Thus, Interim Rule 1007(b)(6) provides that all Chapter 13 debtors shall file a statement of CMI but only above-median income debtors shall make the calculations of disposable income using § 1325(b)(3) ex-

penses on the official form. Rule 1007(b)(6) does not provide that below-median income debtors shall compute disposable income using an Official Form.

Official Form B22C reflects this limited applicability of § 1325(b)(3) expenditures. All Chapter 13 debtors must complete Part III which compares the debtor's CMI to the state median. As stated in the part of the 2005 Committee Note regarding Form B22C, this allows for "a determination of whether the means-test deductions must be used, pursuant to § 1325(b)(3), in calculating disposable income." Only those debtors with above-median income are directed to complete the remainder of the form. Form B22C does not provide lines for below-median income debtors to calculate and report disposable income. It directs below-median income debtors to check a box at the top of the form stating "disposable income is not determined under § 1325(b)(3)" and not to complete: (1) Part IV of the form, Calculation of Deductions allowed under § 707(b)(2); or (2) Part V of the form, Determination of Disposable Income Under § 1325(b)(2).

There is no official form for a below-income debtor to use to calculate disposable income as defined by § 1325(b)(2). This analysis naturally leads to the question, how is a below-median income debtor to calculate disposable income. Under the Code prior to BAPCPA, projected disposable income was determined by utilizing Schedules I and J and requiring amendments of Schedules I and J until they accurately reflected debtor's income and expenses, after which the actual expenses would be examined to determine if they were appropriate. The Code in

median family income of the applicable State for a family of the same number or fewer individuals; or

(C) in the case of a debtor in a household exceeding 4 individuals, the highest medi-

an family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

§ 1325(b)(2) now provides disposable income to mean CMI, a defined term, less "amounts reasonably necessary to be expended" for specified purposes, but there is no form or schedule for calculation of projected disposable income for below-median income debtors. Courts are divided as to the correct method for calculation of projected disposable income by below-median income debtors. Some courts hold that 1325(b)(2) requires the use of CMI, as calculated on Form B22C, Part I, less reasonably necessary expenses, with reliance on Schedule J.[10] Other courts utilize the same procedures as under the Code prior to BAPCPA, examining the debtor's budget based, at least in the first instance, upon the difference between Schedule I income and Schedule J expenditures.[11] These courts reason that "projected disposable income" is a forward looking flexible amount and should be calculated using Schedule I, rather than the backward looking definition of CMI.

**Application of Code and Rules to this Case.**

■ Although the Debtor characterizes the issue in this case as whether the term applicable commitment period is a multiplier rather than a temporal requirement, the Court disagrees and declines to rule on construction of that term. Whether the Debtor's plan can be confirmed depends upon the amount of the Debtor's projected disposable income. If that amount were zero or less, the Court would need to determine whether the plan must run for 36 months even though no dividend would be paid to unsecured creditors. However, if that amount is a positive number, the plan cannot be confirmed because it does not commit Debtor's projected disposable income to the payment of allowed unsecured claims for the 36 month applicable commitment period, as required by § 1325(b)(1)(B).

Debtor contends that her projected disposable income is zero for purposes of § 1325(b)(1)(B) because her disposable income as stated on Form B22C is zero. In Debtor's view, her plan can therefore be confirmed even though no premium is to be paid to unsecured creditors because she has committed all of her disposable income, which is zero, to plan payments.

The Trustee, on the other hand, argues the Debtor's plan cannot be confirmed because the Debtor's projected disposable income for purposes of § 1325(b)(1)(B), calculated as the difference between Schedule I income and Schedule J expenditures, is $305 per month and § 1325(b)(1)(B) requires that this amount be committed to fund the plan over the applicable commitment period of 36 months. The Court agrees with the Trustee.

In this case where there was no testimony regarding income and expenses, there are at least three possible methods for calculation of Debtor's projected disposable income: (1) Form B22C CMI, less § 1325(b)(2) expenses evidenced in the first instance by Schedule J, (2) Schedule I income, less Schedule J expenses; and (3) Part V of Form B22C. The Debtor asserts that choice three is applicable, but the Court rejects this contention as contrary to the Code and an erroneous construction of the Interim Rules and Form B22C.

■ The fact that Form B22C as completed by Debtor is blank as to the amount of § 1325(b)(2) disposable income does not

---

**10.** *E.g., In re Schanuth,* 342 B.R. 601 (Bankr. W.D.Mo.2006); *In re Girodes,* 350 B.R. 31 (Bankr.M.D.N.C.2006).

**11.** *E.g., In re Hardacre,* 338 B.R. at 718; *In re Dew,* 344 B.R. 655 (Bankr.N.D.Ala.2006); *In re Kibbe,* 342 B.R. at 413–15.

mean that her disposable income is zero. As discussed above, the calculation of disposable income as CMI less the means test § 707(b)(2) expenses is the calculation required for above-median income debtors by the Code and Form B22C; the calculation has no application to below-median income debtors. The fact that such expenditures and the resulting disposable income are not calculated on Form B22C for below-median income debtors is of no consequence. The form was not prepared for the purpose of calculating the disposable income of below-median income Chapter 13 debtors; it was designed to determine whether a debtor is subject to the means test formula for determining expenditures and to make the calculations of disposable income only for above-median income Chapter 13 debtors. Option three, on which Debtor relies, is not permitted by the Code.

That leaves alternatives one and two. The Trustee relies upon option two, Schedule I income, less Schedule J expenditures. Debtor utilizes this disposable income calculation when proposing a plan which pays administrative expenses and secured claims. This calculation yields $305, a positive number. Some courts have found it consistent with the Code after BAPCPA.[12] Another possible method of calculating disposable income, approved by some courts, is to start with Form B22C, Part I, CMI and to subtract reasonably necessary expenses by reference to Schedule J.[13] In this case, this calculation yields $600, also a positive number.[14] Because in this case both methods one and two result in positive disposable income and neither the Trustee nor the Debtor have asked the Court to determine whether one of these two methods, or some other method, is correct, the Court leaves this issue of the calculation to another day. It is sufficient for purposes of the Trustee's objection to confirmation for the Court to determine that the Debtor has projected disposable income. That fact requires that Court to sustain the Trustee's objection because Debtor's plan does not devote her disposable income to payment of a dividend to unsecured creditors for the applicable commitment period, which the parties agree is 36 months.

This analysis is supported by *In re Dew*,[15] cited by the Trustee. That case addressed the length of a plan for under-median income debtors and held that for these debtors, disposable income is not determined by Form B22C formula, which depends on § 707(b)(2)(a) and (b). The *Dew* court held the first step, and usually the last step, in the calculation, is to look at Schedules I and J. When, as in *Dew*, that comparison yields a positive number, the plan must run three years.[16]

Debtor cites no case confirming a plan of less that three years for a below-median income debtor. Debtor's primary case au-

---

12. *See* note 11 above.

13. *See* note 10 above.

14. Debtor's Form B22C does not include any regular contributions to the household expenses of the debtor or debtor's expenses that might constitute "child support payments, foster care payments, or disability payments for a dependent child" which are excluded from CMI pursuant to § 1325(b)(2) when calculating "disposable income."

15. *In re Dew*, 344 B.R. at 655.

16. *Id.*, 344 B.R. at 661. The *Dew* court was convinced that the applicable commitment period "referred to in subsection 1325(b)(4)(A) represents a period of time over which chapter 13 plan payments must be made, not a multiplier for use in calculating the total amount to be paid under the plan regardless of the term." *Id.*

thorities are *In re Alexander*,[17] *In re Guzman*,[18] and *In re Fuger.*[19]  The Court finds nothing in these cases to support Debtor's position that her plan to commit $305 per month to the plan only for the approximately 18 month period needed to pay administrative expenses and secured claims should be confirmed.

*Alexander* does support Debtor's contention that the otherwise required three year applicable commitment period does not come into play when the debtor has no projected disposable income.  It states:

> Because applicable commitment period is a term the statute makes relevant only with regard to the required payment of projected disposable income to unsecured creditors and not to any other plan payments or requirements, it simply does not come into play where no projected disposable income must be taken into account.[20]

However, that portion of *Alexander* does not apply here because Debtor has disposable income.  As to the calculation of projected disposable income for above-median and below-median income debtors, *Alexander* states:

> Prior to the passage of BAPCPA, in order to arrive at a disposable income figure for any Chapter 13 debtor, one would subtract monthly expenses reported on Schedule J from monthly income reported on Schedule I . . . .  Now, there is a bifurcated process that hinges upon whether a debtor's current monthly income is above or below the median family income for a similarly-sized household . . . .  The debtor reports her

current monthly income in Part I of Form B22C and determines whether her currently monthly income is above or below the median family income in Part II of Form B22C . . . .  Thus, an above-median income debtor calculates her disposable income figure using the remainder of Form B22C taking allowed deductions under § 707(b)(2).  To arrive at a disposable income figure for a below-median income debtor, one takes the debtor's currently monthly income from Part I of Form B22C and subtracts the total monthly expenses from Schedule J.[21]

Under *Alexander's* formula, Debtor's projected monthly income is $600, the difference between Part I of Form B22C income of $2,738 and Schedule J current expenditures of $2138.  Therefore a plan of less than 36 months could not be confirmed if this Court were to follow *Alexander*.

*In re Guzman*[22] the debtors, who had income above the state median but negative projected disposable income calculated using Form B22C, proposed a plan which paid nothing to unsecured creditors.  The trustee objected, but the court confirmed the plan.  The court noted that under prior practice, analysis of the debtor's budget as stated in Schedules I and J determined whether the plan dedicated projected disposable income to the plan.  The court held that BAPCPA changed this analysis and required a holding that an above-median income debtor with no disposable income under § 1325(b)(3) (as shown on Form B22C) had no projected disposable income to fund a plan, even though appearing to have excess income when

17. *In re Alexander,* 344 B.R. 742 (Bankr. E.D.N.C.2006).

18. *In re Guzman,* 345 B.R. 640 (Bankr. E.D.Wis.2006).

19. *In re Fuger,* 347 B.R. 94 (Bankr.D.Utah 2006).

20. *In re Alexander,* 344 B.R. at 751.

21. *Id.,* 344 B.R. at 746.

22. *In re Guzman,* 345 B.R. at 640.

Schedules I and J were compared. This result was identified as "seemingly discriminatory against chapter 13 debtors with incomes below the median."[23]

*In re Fuger* is also an above-median income case where the monthly disposable income calculated using From B22C was negative. The court found the term "applicable commitment period" ambiguous and, after considering legislative intent and case law, concluded that it is both a monetary and temporal provision.[24] Because the trustee did not attempt to show that the debtors' projected monthly income was different from the Form B22C amount of—$877.71, the court held that the fact that the "applicable commitment period" was 60 months did not require a plan of that duration.

To reiterate, Debtor's predicate for her argument that the applicable commitment period is a multiplier rather than a temporal period is that she has zero projected disposable income. Because the Court finds that she has projected disposable income above zero, the Court declines to address the *temporal v. multiplier issue.*

**CONCLUSION.**

For the foregoing reasons, the Court sustains the Trustee's objection to confirmation of the Debtor's plan. The Debtor does not have zero projected disposable income. Because Debtor has below-median income, the Code requires that she commit her projected disposable income to the payment of unsecured creditors for a three year period, unless her unsecured creditors are paid in full prior to the end of such period.

**IT IS SO ORDERED.**

---

23. *Id.,* 345 B.R. at 642.

24. *In re Fuger,* 347 B.R. at 98–101.