Karen KIBBE, Debtor.

Karen Kibbe, Appellant,

v.

Lawrence P. Sumski, Chapter
13 Trustee, Appellee.

BAP No. 06–019.
Bankruptcy No. 06–10012–MWV.

United States Bankruptcy Appellate Panel
of the First Circuit.

Feb. 20, 2007.

Michael Kainen, Esq., on brief for Appellant.

Lawrence P. Sumski, Chapter 13 Trustee, on brief for Appellee.

Before FEENEY, BOROFF & SOMMA, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

The debtor, Karen Kibbe (the "Debtor"), appeals from the bankruptcy court's order denying confirmation of her Chapter 13 plan. The issue on appeal is whether the bankruptcy court properly determined how to calculate a below-median income debtor's "projected disposable income," as that term is employed in 1325(b)(1)(B) of the Bankruptcy Code.[1] The resolution of this question turns on whether (and/or how) the term "projected disposable income" differs from the unmodified term "disposable income," as defined in 1325(b)(2). Reconciliation of these terms is of particular import where, as here, a debtor's income has changed such that the debtor's "current monthly income," as defined by 101(10A) and incorporated into the term "disposable income," differs significantly from the debtor's *actual* monthly income during the Chapter 13 plan commitment period.

By its order, the bankruptcy court below concluded that "projected disposable income" should be determined according to the income and expenses represented on Schedules I and J, rather than by the outcome of Official Form B22C which is used to calculate "current monthly income." Our view differs slightly, but under the circumstances of this case perhaps not materially, from the view expressed by the court below. In any event, we agree with the bankruptcy court that Congress intended the term "projected disposable income" for below-median income debtors to be forward-looking and reality-based and not grounded in blind adherence to any artificial formulation. Accordingly, the order denying confirmation of the Debtor's Chapter 13 plan is hereby AFFIRMED.

## JURISDICTION

A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits, even if the issue of jurisdiction is not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.,* 226 B.R. 724 (1st Cir. BAP 1998). A panel may hear appeals from "'final judgments, orders and decrees,' or 'with leave of the court, from interlocutory orders and decrees.'" *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998) (quoting 28 U.S.C. 158(a)(1) and (3)) (internal citations omitted). An order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," whereas an interlocutory order "'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American*

---

1. Unless otherwise specifically noted, all references to the "Bankruptcy Code" or to specific sections of the Bankruptcy Code are to the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Act of 2005, 11 U.S.C. § 101, *et seq.* (2005) ("BAPCPA").

*Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)).

Generally, an order denying confirmation of a proposed Chapter 13 plan is not a final order because, typically, the debtor will be free to propose an alternate plan. *See Watson v. Boyajian,* 309 B.R. 652, 659 (1st Cir. BAP 2004), *aff'd,* 403 F.3d 1 (1st Cir.2005); *Bentley v. Boyajian,* 266 B.R. 229, 233–34 (1st Cir. BAP 2001). However, this Panel, exercising its discretionary authority under 28 U.S.C. § 158(a)(3), granted the Debtor leave to appeal the denial of her proposed Chapter 13 plan.

### STANDARD OF REVIEW

Reviewing courts generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See T.I. Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms. Inc.,* 43 F.3d 714, 719–20 n. 8 (1st Cir. 1994). Accordingly, where the issue on appeal is essentially one of statutory interpretation, it will be subject to *de novo* review. *See Vicenty v. San Miguel Sandoval,* 327 B.R. 493, 506 (1st Cir. BAP 2005) (citing *Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir.1995)). Here, the bankruptcy court's denial of confirmation of the Debtor's Chapter 13 plan was premised upon its interpretation of § 1325(b). That interpretation of the Bankruptcy Code is a conclusion of law subject to *de novo* review.

### THE STATUTORY PREDICATE (AND PREDICAMENT)

Section 1325(b)(1) requires that a debtor commit all of his or her "projected disposable income" to payments to unsecured creditors through a Chapter 13 plan.

> If the trustee or holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> . . .
>
> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B) (emphasis supplied).

The Code goes on to define "disposable income," in relevant part, as follows:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependant child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
>
> > (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> >
> > (ii) for charitable contributions . . . in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made
>
> . . .

11 U.S.C. § 1325(b)(2).

Finally, the term "current monthly income" is defined, in relevant part as follows:

> (A) . . . the average monthly income from all sources that the debtor receives . . . without regard to whether such in-

come is taxable income, derived during the 6–month period ending on—

> (I) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii) . . . and
>
> (B) includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependants . . . but excludes benefits received under the Social Security Act . . .

11 U.S.C. § 101(10A) (2005).

Form B22C, which debtors must file pursuant to Interim Federal Rule of Bankruptcy Procedure 1007(b)(6),[2] serves, in part, to calculate a debtor's "current monthly income".

### THE BACKGROUND AND TRAVEL OF THE CASE

The Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on January 5, 2006. At that time, the Debtor filed her bankruptcy Schedules, including Schedule I ("Current Income of Individual Debtor(s)"), Schedule J ("Current Expenditures of Individual Debtor(s)") and Official Form B22C ("Statement of Current Monthly Income").

During the six-month period prior to her filing, the Debtor had been employed, but had procured a higher paying job just prior to the date the bankruptcy petition

was filed. Consequently, by averaging her income during those six prepetition months, the Debtor's Form B22C showed "current monthly income" of $1,068.50. Because her "current monthly income," when multiplied by twelve, was less than the applicable monthly median family income earned in the State of New Hampshire, the Debtor was classified as a "below-median income" debtor.

In preparing her Chapter 13 plan, the Debtor based her "projected disposable income" on the "current monthly income" set forth in her Form B22C. Because $1,068.50 was less than her "reasonably necessary" monthly expenses of $2,645, derived from her Schedule J,[3] the Debtor concluded that she had no "disposable income" as defined by § 1325(b)(2), and therefore no "projected disposable income" to commit to unsecured creditors. This conclusion is reflected in the proposed plan, which provides for no payment to the Debtor's unsecured creditors.

The Chapter 13 Trustee (the "Trustee") filed a motion to dismiss the Debtor's case based on his disagreement with the Debtor's calculation of her "projected disposable income." The Trustee argued that "projected disposable income" should be determined by reference to the Debtor's actual monthly income and expenses as identified in both Schedules I and J, and that the income side of the equation should not be irrevocably rooted in the calculation of "current monthly income" set forth in

---

**2.** Interim Fed.R.Bank.P. 1007(b)(6) provides:

(6) A debtor in a Chapter 13 case shall file a statement of current monthly income, prepared as prescribed by the appropriate Official Form . . .

The Interim Rules have been approved and recommended by the Standing Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, and have been adopted by the United States Bankrupt-

cy Court for the District of New Hampshire by its order of October 14, 2005.

**3.** Where a debtor's household current monthly income falls below the median for the state of his or her residence, the expenses to be used in the calculation of "disposable income" are those which are reasonably necessary for the maintenance or support of the debtor or the debtor's dependents. See § 1325(b)(2)(A)(i).

Form B22C. Indeed, the Debtor's Schedules I and J, respectively, reflect actual monthly income of $5,027 and expenses of $2,645. The Trustee contended that the difference between the two ($2,382) was the Debtor's actual "projected disposable income," the amount that should be dedicated to payment for unsecured obligations through the Chapter 13 plan. Accordingly, the Trustee maintained that the Debtor's plan could not be confirmed because it failed to commit all of her projected disposable income to her unsecured creditors, in violation of § 1325(b)(1).

The bankruptcy court held a hearing on the Trustee's motion to dismiss and, finding the Trustee's arguments more persuasive, subsequently issued its Order and Memorandum Opinion denying confirmation of the plan.[4] The court held that "projected disposable income" should be determined in accordance with Schedules I and J, and not by adherence to the calculation of "current monthly income" set forth in Form B22C. The Debtor timely appealed.

## DISCUSSION

The term "projected disposable income" is not new and has never, even in prior versions of the Bankruptcy Code, been defined. Prior to the 2005 BAPCPA

amendments, "disposable income" was defined simply as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor ..." 11 U.S.C. § 1325(b)(2), *prior to amendment by* BAPCPA. In the simplest pre-BAPCPA cases, determining the debtor's "disposable income" available to fund a plan entailed subtracting expenses listed in Schedule J from income listed in Schedule I, provided the bankruptcy court was satisfied that those numbers were accurate representations of a debtor's monthly income and expenses.[5] Pre–BAPCPA calculation of a debtor's "projected disposable income" was "usually accomplished by multiplying the debtor's monthly income by 36 [for a three-year plan]. Next, the bankruptcy court [would] assess the amount of the debtor's income that [wa]s 'disposable.' "[6] *Commercial Credit Corp. v. Killough (In re Killough),* 900 F.2d 61, 64 (5th Cir. 1990).

The BAPCPA amendments to § 1325(b)(2) make "disposable income" dependent on a debtor's "current monthly income," but leave the term *projected* disposable income" undefined. The problem, though, is that "current monthly income" is a historical calculation, while the term

4. The bankruptcy court treated the motion to dismiss as an objection to plan confirmation and, although it denied confirmation, it did not dismiss the bankruptcy case.

5. While Schedule I was the main reference for determining a debtor's income, other evidence, such as the testimony of the debtor, was considered in the event that the court believed Schedule I to be an inaccurate predictor of future income. *See In re McGovern,* 278 B.R. 888, 895 (Bankr.S.D.Fla.2002) (where potential future bonuses were not accounted for in Schedule I, the court heard testimony from the debtor and found that future bonuses were too speculative to be included in the "projected disposable in-

come" analysis); *In re Killough,* 900 F.2d at 65 (where a question arose as to the debtor's ability to work overtime hours, the court considered testimony provided by the debtor at the plan confirmation hearing, in addition to evaluating Schedule I, to determine the debtor's projected monthly income).

6. Because the instant controversy does not involve a dispute as to the appropriate manner in which to determine the expense side of the equation, and the parties agree that the amount of the Debtor's "reasonably necessary" expenses is $2,645, the expense component of the ."projected disposable income" calculation will not be further treated.

"projected" is forward-looking. As courts facing this conundrum have noted, the term "projected" means "to calculate, estimate, or predict (something in the future), based on present data or trends." *In re Jass,* 340 B.R. 411, 415 (Bankr.D.Utah 2006) (quoting *The Am. Heritage College Dictionary* 1115 (4th ed.2002)). However, "disposable income" is based on "current monthly income," *which is not necessarily current,* but is a snapshot of the debtor's prepetition income.

The resolution of this apparent inconsistency within the term "projected disposable income" has generated two competing interpretations by those bankruptcy courts who have confronted the problem—each claiming to adhere to congressional purpose. The first camp holds that the term "projected" simply means that the "currently monthly income" figure from B22C must be multiplied (projected out) by the number of months of the proposed plan. *See In re Barr,* 341 B.R. 181 (Bankr. M.D.N.C.2006). This interpretation construes "projected" simply as a multiplier for the term "disposable income." *See also In re Tranmer,* 355 B.R. 234, 245–46 (Bankr.D.Mont.2006) ("projecting disposable income based on secured and priority debt is no less realistic than the figures used in Schedules I and J for purposes of proposing a feasible plan").

The second camp holds that, because the debtor's disposable income must be used to fund the plan, the term "projected" was intended to signal a reexamination of income potential over the life of the plan. The effective consequence of this latter construction is that the terms "disposable income" and "projected disposable income" have very separate meanings. *See In re Hardacre,* 338 B.R. 718 (Bankr.N.D.Tex. 2006). *See also In re Pak,* 357 B.R. 549, 552–53 (Bankr.N.D.Cal. Dec.14, 2006) ("In determining whether a plan provides all of the debtor's 'projected monthly income,' a court should attempt to predict what the debtor's disposable income during the term of the plan will be, using the definition of 'current monthly income' set forth in 11 U.S.C. § 101(10A)"); *In re Casey,* 356 B.R. 519, 522–23 (Bankr.E.D.Wash. 2006) ("the word 'projected' ... requires a court to examine anticipated disposable income rather than historical disposable income, estimated disposable income, or some other type of disposable income"); *In re Bossie,* 2006 WL 3703203, slip op. at *2 (Bankr.D.Alaska Dec. 12, 2006) (court refused to confirm plan "because, at [that] time, there [was] insufficient evidence to calculate [the debtors'] anticipated or projected disposable income" and required the debtors to "present specific evidence to show that the numbers reflected on form [B]22C are inaccurate projections of their future finances").

Said otherwise, the latter camp provides a critical meaning to the term "projected" which the former would dwarf. The Debtor here touts the first camp as better reasoned; the Trustee urges this Panel, to follow the second, as did the bankruptcy court below. A closer examination of the decisions in support of each interpretation seems a worthwhile exercise.

### a. *Barr* and Its Progeny

Before the court in *Barr* was an above-median income debtor whose "disposable income," according to Form B22C, yielded a negative result; however, the difference between her Schedules I and J reflected net disposable income of $2,529. *In re Barr,* 341 B.R. at 183. When the debtor's proposed plan provided no payments to her unsecured creditors based on the Form B22C calculation, the Chapter 13 trustee complained that the plan did not comply with the good faith requirement of § 1325(a)(3).

The *Barr* court held that the definitions of "disposable income" were "detailed and inflexible, *particularly as to expenses and deductions for above-median-income debtors.*" *Id.* at 185 (emphasis added). The court reasoned that "[c]alculating 'disposable income' for above-median-income debtors under the new section 1325(b) is now separated from a review of Schedules I and J and no longer turns on the court's determination of what expenses are reasonably necessary for the debtor's support." *Id.* at 186. Conceding that many sources had criticized this approach as producing unintended or absurd results, the court characterized its position as a refusal to rewrite § 1325(b) as "to do so . . . would impermissibly undermine policy choices made by Congress." *Id.* It is noteworthy, however, that the *Barr* decision focused particularly on calculations for above-median income debtors.

*In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C.2006), involved several debtors, both above- and below-median income earners, who had objected to the trustee's motions for confirmation of their various plans.[7] Following *Barr*, the *Alexander* court, in *dicta*, strictly construed the new statutory language and refused to conform the new § 1325 to pre-BAPCPA standards. It opined that:

> The concept of disposable income as the bankruptcy system knew it has changed. However, this court will not override the definition and process for calculating disposable income under § 1325(b)(2)-(3) as being absurd simply because it leads to results that are not aligned with the old law.
>
> . . .

[Section] 1325(b)(2)-(3) plainly sets forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income figure under the new law. . . . [I]n order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) [using Form B22C] and does the math."

*Id.* at 747–749 (in part citing *In re Barr*, 341 B.R. at 185).

The *Alexander* court expressly disagreed with the treatment of "projected disposable income" and "disposable income" as separate phrases with different definitions, preferring its interpretation as being more "consistent with a plain reading of the statute." *Id.* at 748–49. Noting that both terms are found in § 1325(b), which contains the definition for "disposable income," the court surmised that "[i]f 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose." *Id.* at 749.

The *Alexander* court further noted that Chapter 13 trustees had anticipated that the BAPCPA changes might lead to smaller dividends to unsecured creditors and had voiced their concerns to Congress, "asking that [current monthly income] less deductions be a minimum, not the maximum, but no changes were made . . . As in *Lamie*, 'this alert, followed by the Legislature's nonresponse, should support a presumption of legislature awareness and intention.' " *Id.* at 747–48 (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 541, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)) (internal citations omitted).

---

**7.** In the Eastern District of North Carolina, "after reviewing a debtor's petition, schedules, statements, proposed plan, and information provided at the § 341 meeting, [it is] the trustee [who] move[s] for confirmation of a plan that he asserts is consistent with the requirements of Chapter 13." *In re Alexander*, 344 B.R. at 744.

### b. *Hardacre* and Its Progeny

In the *Hardacre* case, the trustee had objected to the debtor's calculation of disposable income on the grounds that she had "double-dipped" on the expense calculation under Form B22C by reducing her available income twice on account of the same mortgage and car loan payments. *In re Hardacre*, 338 B.R. at 720. The court took the opportunity, however, in *dicta*, to opine on the income aspect of the calculations before addressing the expense issue.

The *Hardacre* court voiced its concern over the potential consequences in using Form B22C ("current monthly income") as the sole determinant of the income side of "projected disposable income."

> A strict application of section 101(10A)'s definition of "current monthly income" can have serious consequences in some cases. For example, if "current monthly income," as defined in section 101(10A) applies, a debtor who anticipates a significant enhancement of future income is provided strong incentive to file chapter 13 as soon as possible. The amount of money that she would be required to commit to the plan would be based upon her lower average income prior to filing. On the other hand, a debtor who finds herself in the unfortunate circumstance of having a lower income after filing her petition might find that she is unable to confirm a plan because she cannot devote to the plan a "projected disposable income" predicated upon her prepetition income.

*Id.* at 722. The court concluded that "the term 'projected disposable income' must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income."

The court offered three justifications in support of its conclusion. First, it stated that Congress could have just used the term "disposable income" in § 1325(b)(1)(B), but instead used "projected disposable income." Noting that "[t]he court is to presume that 'Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another...'" (citation omitted), the *Hardacre* court determined that "Congress must have intended 'projected disposable income' to be different than 'disposable income.'" *Id.* at 723. Second, the court turned to the language that "projected disposable income *to be received*" must be dedicated to the plan. It found this language indicative of a congressional intent "to refer to the income actually to be received by the debtor during the commitment period, rather than the prepetition average income"—as the alternative would render the phrase "to be received" superfluous. *Id.* And finally, the court examined the requirement that "projected disposable income" "*as of the effective date of the plan*" be committed to unsecured creditors and found significance in the timing. The court stated that the phraseology suggests the "projected disposable income" to be committed to the plan must be the debtor's income as of the effective date of the plan, and not income as measured prepetition. *Id.*

Within weeks of the *Hardacre* opinion, *In re Jass*, 340 B.R. 411 (Bankr.D.Utah 2006) took a slightly different bent. In *Jass*, the "disposable income" derived from the debtors' Form B22C was much higher than the amount of money committed to unsecured creditors in the proposed plan. When the Chapter 13 trustee objected to confirmation, the debtors argued that, because of their medical conditions, their future expenses and income were not accurately reflected in their Form B22C and their "projected disposable income" should be measured differently (and more realistically). *In re Jass*, 340 B.R. at 413.

They argued that the word "projected" modifies the definition of "disposable income," and suggested that where a debtor can show that Form B22C, based on income received six months prior to filing, is not indicative of the debtor's future or "projected" income, then the debtor need not pay to unsecured creditors an amount commensurate with Form B22C. *Id.* The court agreed.

In order to give meaning and import to the word "projected," the *Jass* court concluded that the language of § 1325(b)(1)(B) means that "the number resulting from Form B22C is a starting point for the Court's inquiry only ... The significance of the word 'projected' is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B)." *Id.* at 415–16. As in *Hardacre,* the *Jass* court viewed "disposable income" and "projected disposable income" as separate terms with different meanings. *Id.* at 417. The court further noted that its interpretation was consistent with the policies underlying the Bankruptcy Code, stating that "if the Court were to reach a *different* result and hold that a debtor must always pay unsecured creditors the number resulting from Form B22C, the Court would offend the 'fresh start' policies of the Code ... [by] foreclos[ing] the potential for bankruptcy relief from a group of Chapter 13 debtors who are otherwise eligible for relief..." *Id.* (emphasis in original).

The "projected disposable income" calculation was articulated by the *Jass* court as follows:

> Form B22C will always be the starting point for the Court's inquiry into whether the debtor is complying with the "projected disposable income" requirement of § 1325(b)(1)(B). The Court will presume that the number resulting from Form B22C is the debtor's "projected disposable income" unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future.

*Id.* at 418. But the court cautioned that "[a]s a general rule, Debtors should not expect the bottom line determined from Schedules I and J to trump the calculations of a properly completed Form B22C." *Id.* at 419.

#### c. *Karen Kibbe*

The bankruptcy court below agreed with *Hardacre* and *Jass,* giving materially separate effect to the word "projected." *In re Kibbe,* 342 B.R. 411, 414 (Bankr.D.N.H. 2006) (citing *In re Jass,* 340 B.R. at 417–18).[8] The bankruptcy court concluded:

> Recognizing that the term "projected disposable income" is forward-looking, the Court agrees with the conclusion of *In re Hardacre* that "projected disposable income" must be based upon the debtor's anticipated income during the term of the plan, not merely [on] an average of her prepetition income. Thus, disposable income in the instant case is determined by reference to Schedules I and J. To conclude otherwise would invite "anomalous results" when a debtor has had a change of circumstances during the six months immediately prepetition.

*Id.*

However, in its adherence to Schedule I, the bankruptcy court abandoned the new

---

**8.** Courts have generally lined up behind either the *Barr* or *Hardacre* interpretations, with the latter having a more crowded field.

definition for "disposable income." But Congress apparently intended to exclude certain categories of income when it defined "disposable income" generally and then in the chapter 13 context. Not to be included in the income determination under chapter 13 are:

1. benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism ... or domestic terrorism ... on account of their status as victims of such terrorism [§ 101(10A)(B) ]; and

2. child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child ... [§ 1325(b)(2) ].

(Together, the "Income Exclusions"). These income items are included in Schedule I, and, therefore, that listing, without modification, is not an accurate measure of the new "disposable income" definition.

■■■ We agree with the bankruptcy court that "projected disposable income" as set forth in § 1325(b)(1)(B) must be grounded in the Debtor's anticipated income (but we say less the Income Exclusions) during the term of her plan. And we agree with the reasoning in *Jass* that Form B22C must at least be the starting point for any determination of "projected disposable income." In the event that a debtor's "current monthly income" as set forth by Form B22C is substantially the same as the actual current income at the time of confirmation of the plan, less the Income Exclusions, the inquiry begins and ends with Form B22C. But where, as here, the "current monthly income" amount is not true to the debtor's *actual* current income, courts should assume that Congress intended that they rely on what a debtor can realistically pay to creditors through his or her plan and not on any artificial measure. Attaching the word "projected" to a historical calculation assumes, without justification, that a debtor's circumstances will not change after the date of case commencement or during the plan commitment period. Life informs otherwise. Insofar as the term "disposable income" demands a look back and the term "projected" requires a look forward, the language is irreconcilable.[9] One must give way to the other, or the courts must fashion an interpretation that gives the greatest meaning to both.

■■■ Principles of legislative construction do not require that we take a contrary view. It would be inappropriate to give heed only to the historical perspective set forth in the term "disposable income," as this would effectively write the term "projected" out of § 1325(b). The Debtor urges that result when she argues that we should construe the term "disposable income" and "projected disposable income" as having the same meaning. We decline to do so.[10] That construction ig-

---

**9.** We respectfully reject the view espoused in *Barr* and its adherents that the term "projected" is a synonym for "multiplied." Congress was not hesitant in using the term "multiplied" when the context so demanded. *See, e.g.,* §§ 727(a)(2)(A)(I), and 1325(b)(3) and (4). The word "multiplied" is quite different from the word "projected." The former requires only mathematical acumen; the latter, mathe-

matic acumen adjusted by deliberation and discretion.

**10.** We also reject the Debtor's other arguments made in her brief and/or in oral argument, attempting to find the meaning of the statutory terms "disposable income" and "projected disposable income" by pointing to one or more other inconsistencies in the

nores the "time-honored tenet that '[a]ll words and provisions of a statute are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous,'" *Lopez–Soto v. Hawayek,* 175 F.3d 170, 174 (1st Cir.1999), (quoting *United States v. Ven–Fuel, Inc.,* 758 F.2d 741, 751–52 (1st Cir.1985); *United States v. Ahlers,* 305 F.3d 54, 58 (1st Cir.2002)). Furthermore, as the *Hardacre* court noted: "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *Lopez–Soto,* 175 F.3d at 174 (quoting *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)).

▆▆▆▆ It is also well-settled that when faced with an ambiguous statute, courts should not adopt a construction which would lead to an absurd result. *Gen. Motors Corp. v. Darling's,* 444 F.3d 98, 108 (1st Cir.2006). As the Supreme Court explained in *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 454–55, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989):

> Where the literal reading of a statutory term would "compel an odd result," *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 509, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989), we must search for other evidence of congressional intent to lend the term its proper scope. *See also, e.g., Church of the Holy Trinity, supra, [v. U.S.]* 143 U.S., [457]at 472, 12 S.Ct., [511]at 516 [(1892)]; *FDIC v.*

*Philadelphia Gear Corp.,* 476 U.S. 426, 432, 106 S.Ct. 1931, 1935, 90 L.Ed.2d 428 (1986). "The circumstances of the enactment of particular legislation," for example, "may persuade a court that Congress did not intend words of common meaning to have their literal effect." *Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). Even though, as Judge Learned Hand said, "the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing," nevertheless "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham,* 148 F.2d 737, 739 (CA2), *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 53, 73 L.Ed. 170 (1928) (Holmes, J.). *See also United States v. American Trucking Assns., Inc.,* 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940) ("When aid to

---

BAPCPA amendments. For example, the Debtor seeks to dispose of the current ambiguity by relying on another: the language of § 1325(b)(1) which the Debtor claims directs that all of a debtor's disposable income be paid only to "unsecured creditors," and §§ 1322(b)(4) and (5) which clearly permit the debtor to use postpetition funds to cure

prepetition arrearages to secured creditors. But we derive no greater clarity in our analysis of any one inconsistency by cross-referencing it with another. We are here *only* attempting to reconcile the statutory terms "disposable income" and "projected disposable income." We have neither need, nor desire, nor authority, to go further.

construction of the meaning of words, as used in the statute, is available, there certainly can be 'no rule of law' which forbids its use, however clear the words may appear on 'superficial examination' ") (citations omitted).

■ Rigid adherence to a debtor's prepetition income history would commonly produce results at odds with both congressional purpose and common sense. If a debtor's prepetition averaged income was significantly higher than the debtor's income at plan confirmation, statutory indifference to the change at confirmation would doom any chapter 13 plan. Conversely, if, as here, a debtor's prepetition averaged income was significantly lower than his or her income at plan confirmation, the debtor would be granted a windfall. As a result, unless a debtor's prepetition averaged income was substantially the same as it was at plan confirmation, either creditors would be cheated or, by dint of plan failure, neither the debtor nor the creditors would obtain the benefits that Congress intended for both under chapter 13 of the Bankruptcy Code. We find it unlikely that Congress intended either result. The intent of Congress can be best gleaned by examination of the legislative history surrounding the enactment of BAPCPA:

> The heart of [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ("needs-based bankruptcy relief" or "means-testing"), *which is intended to ensure that debtors repay creditors the maximum they can afford.*

H.R.Rep. No. 109–31, pt. 1, at 2 (2005) (emphasis supplied). The words "maximum" and "afford" tell the story. Congress intended that debtors pay the greatest amount within their capabilities. Nothing more; nothing less.

■ The bankruptcy court below was right to deny confirmation of the Debtor's plan. The Debtor proposed a plan that does not commit all of her "projected disposable income" to repayment of her debts. Indulgence in the Debtor's interpretation of "projected disposable income" would result in a windfall to a debtor whose income had changed for the better since the six-month prepetition average reflected on Form B22C, and would harm a debtor whose income had changed for the worse and who would find plan payments impossible to meet. We hold that the income component of "projected disposable income" as set forth in § 1325(b)(1)(B) is the anticipated *actual* income of the Debtor, subject to the Income Exclusions, during the plan commitment period.[11] That construction gives meaning and effect to each of the terms "current monthly income," "projected," and "disposable income."

Where the income calculation of Form B22C comports with a debtor's actual income at the time of confirmation and as reasonably anticipated for the plan commitment period, no further determination is necessary. *See, e.g., In re Teixeira,* 358 B.R. 484 (Bankr.D.N.H.2006). However, where the debtor's income at confirmation or as reasonably anticipated for the plan commitment period is materially different from the debtor's "disposable income" as defined by § 1325(b)(2), the court must

---

11. We note, however, that this definition of "projected disposable income" does not preclude a debtor's use of available monies excluded from the definition (e.g., the Income Exclusions) to support the feasibility of the debtor's plan. We further note that ambiguities, if any, in the calculation of allowable expenses for above or below-median debtors are not before us.

depart from the Form B22C calculation. The calculation of disposable income according to Form B22C can not be determinative of the debtor's "projected disposable income" because it does not take into account the debtor's circumstances as of the petition date or foreseeable changes in circumstances in income during the plan commitment period. Similarly, the figures set forth on Schedules I can also not be determinative because, although they reflect circumstances on the petition date, they ignore the new statutory definition of the term "disposable income" and fail as well to account for reasonably anticipated changes in the debtor's circumstances after the petition date. If circumstances dictate that neither Form B22C nor Schedules I and J accurately portray the debtor's income (less the Income Exclusions) projected over the plan commitment period, the bankruptcy court must make a fact-based determination at the time of confirmation, whether by way of the parties' agreement or the taking of evidence.

Said most directly, the object is not to select the right form, but to reach a reality-based determination of a debtor's capabilities to repay creditors. This object, we believe, best preserves both the congressional formulation of § 1325(b) and the unaltered twin mandates of the Bankruptcy Code: a fresh start for the honest debtor and a uniform and equitable distribution to creditors.

### CONCLUSION

The bankruptcy court's denial of confirmation of the Debtor's plan is AFFIRMED, and the matter is REMANDED for further proceedings consistent with this opinion.