**In re Glen H. RUDLER, Debtor.**

**Phoebe Morse, United States Trustee, Appellant,**

v.

**Glen H. Rudler, Appellee.**

**In re William J. Hagerty, Debtor.**

**Phoebe Morse, United States Trustee, Appellant,**

v.

**William J. Hagerty, Appellee.**

BAP Nos. 07–015, 07–019. Bankruptcy Nos. 06–10982– MWV, 06–10809–MWV.

United States Bankruptcy Appellate Panel for the First Circuit.

May 23, 2008.

Ann Marie Dirsa, Esq., on brief for Appellant.

Scott W. LaPointe, Esq., on brief for Appellee, Glen H. Rudler.

Paul A. Petrillo, Esq., on brief for Appellee, William J. Hagerty.

Before LAMOUTTE, VOTOLATO and DE JESÚS, United States Bankruptcy Appellate Panel Judges.

## INTRODUCTION

VOTOLATO, Bankruptcy Judge.

The issue presented in this appeal is— when calculating "means test" eligibility, is it permissible to deduct payments due to secured creditors to whom the debtor intends to surrender the secured property? The United States Trustee (the "UST") disagrees with the conclusion of the United States Bankruptcy Court for the District of New Hampshire ("bankruptcy court") denying the UST's motions to dismiss the captioned cases for abuse under § 707(b)(1).[1] Before the bankruptcy court and on appeal, the UST asserts that payments due on collateral that the debtor intends to surrender must be included as part of the debtor's disposable monthly income.

## JURISDICTION

■ Before addressing the merits of this dispute, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998).

■ A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment,'" *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

■ Typically, while denials of motions to dismiss are not deemed final for appellate purposes, the Panel agrees with those courts holding that denial of a request for dismissal regarding the application of the means test should be treated as final appealable orders. *See Randle v. Neary (In re Randle)*, 2007 WL 2668727 at *4 (N.D.Ill. Jul.20, 2007) ("[T]he split among the bankruptcy courts over application of the means test to this issue provides greater support for treating the denial of the Trustee's motion to dismiss for substantial abuse as final."); *Fokkena v. Hartwick*, 373 B.R. 645, 646 (D.Minn.2007) (on appeal from bankruptcy court's order denying the

---

1. The terms "Bankruptcy Code," "section," and "§ " refer to title 11 of United States Code, 11 U.S.C. § 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8 ("BAPCPA").

UST's motion to dismiss under § 707(b)); *see also In re Northwood Properties,* 509 F.3d 15 (1st Cir.2007) (an order is final if it disposes of all issues surrounding a discrete controversy within a larger proceeding). Therefore, this Panel concludes that the bankruptcy court's orders denying the UST's motions to dismiss under § 707(b) are final appealable orders.

## STANDARD OF REVIEW

 Appellate courts generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See TI Fed. Credit Union v. Del-Bonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). Where the issue on appeal is essentially one of statutory interpretation, it will be subject to *de novo* review. *See Kibbe v. Sumski (In re Kibbe),* 361 B.R. 302 (1st Cir. BAP 2007) (citing *Vicenty v. San Miguel Sandoval,* 327 B.R. 493, 506 (1st Cir. BAP 2005); *Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir.1995)). Here, the bankruptcy court's denial of the motions to dismiss was premised on its interpretation of § 707(b)(2). That interpretation of the Bankruptcy Code is a conclusion of law subject to *de novo* review.

## BACKGROUND

Because these two bankruptcy appeals are factually similar and present the same legal issue, they were consolidated for oral argument, and for the same reasons, both appeals are addressed and decided in this joint opinion.

William J. Hagerty ("Hagerty") filed: (1) a petition for Chapter 7 relief on July 14, 2006; (2) a "Chapter 7 Statement of Current Monthly Income and Means–Test Calculation" ("Form 22A"); and (3) a "Chapter 7 Individual Debtor's Statement of Intention" (the "Statement of Intention"). The Statement of Intention signaled Hagerty's intent to surrender his home and one of his motor vehicles.

Glen H. Rudler ("Rudler," and, together with Hagerty, "the Debtors"), whose case is not markedly different, filed his Chapter 7 petition on August 15, 2006, and also filed a Form 22A and the Statement of Intention to surrender his homestead property.

Pursuant to § 707(b)(1)(A), the UST filed Statements of Presumed Abuse and motions to dismiss both Debtors' cases under the abuse provision of § 707(b)(1). The UST disputes both Debtors' calculations of their disposable monthly income and argues that each Debtor had disposable monthly income that exceeded the amount permitted for Chapter 7 relief. That is, instead of deducting the loan payments due on the homestead property which the Debtors intend to surrender, the UST deducted only the "IRS Housing and Utilities Standards"[2] from the Debtors' monthly incomes. The UST also excluded Hagerty's deduction of the loan payments for the vehicle he proposed to surrender.

After hearing, the bankruptcy court denied the UST's motions to dismiss, holding that *all* scheduled contractual payments to secured creditors may be deducted from current monthly income, notwithstanding

---

**2.** In completing the means test, for some monthly expenses, debtors are required to use both national and local standards issued by the Internal Revenue Service ("IRS"). *See* 11 U.S.C. § 707(b)(2). The local standards apply to two categories of expenses—(1) housing and utilities; and (2) transportation. In calculating their eligibility for Chapter 7 relief, debtors, for the most part, are required to use either their actual expense for housing, utilities and transportation or the IRS local standard, whichever is smaller. *See id.*

that the Debtors intend to surrender the property.

## DISCUSSION

█ Under § 707(b)(1), the UST may move to dismiss a case "filed by an individual debtor under this chapter whose debts are primarily consumer debts ... if [the court] finds that the granting of relief would be an abuse.... "Abuse" is determined under either § 707(b)(2) or § 707(b)(3). Section 707(b)(2) prescribes an objective test and § 707(b)(3) requires an analysis of the totality of the circumstances. Here, the UST relies solely on § 707(b)(2)—i.e., the "means test."

The § 707(b)(2) financial means test "creates a presumption of abuse when a debtor's disposable income exceeds fixed amounts," *In re Singletary*, 354 B.R. 455, 460–61 (Bankr.S.D.Tex.2006), and to determine a debtor's disposable monthly income, a complex mathematical equation is provided. Fortunately for this Panel, only § 707(b)(2)(A)(iii) has been brought before it. That section provides that for Chapter 7 debtors:

> The debtor's average monthly payment on account of secured debts shall be calculated as the sum of the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition ... divided by 60.

█ The UST contends, and we agree, that § 707(b)(2)(A)(iii) must be construed in a way that gives meaning and effect to all of the statutory words and phrases. *See In re Kibbe*, 361 B.R. at 312. We do not, however, agree with the UST's interpretation and application of that principle.

█ So we begin our own analysis "where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985)). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); *Ron Pair*, 489 U.S. at 241, 109 S.Ct. 1026; *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

In *In re Walker*, the court interpreted the first phrase at issue, "scheduled as contractually due," as "those payments that the debtor will be required to make on certain dates in the future under the contract." 2006 WL 1314125 *3 (Bankr. N.D.Ga.2006). And as a result, "nothing the debtor does or does not do changes the fact that scheduled payments remain contractually due." *Id.* at *4.

The UST cites *In re Skaggs*, 349 B.R. 594 (Bankr.E.D.Mo.2006), for a different interpretation of "scheduled as contractually due," where the court examined the text of the Bankruptcy Code for instances where the words "scheduled as" were used, and concluded, *based solely on § 1111(a),*[3] that the phrase "scheduled as" referred only to whether a debt is identified on a debtor's bankruptcy schedules. *Id.* at 599.

---

**3.** Although § 1111(a) contains the phrase "scheduled as," the reference is clearly to the previous words in the same sentence: "ap-

pears in the schedules." *See In re Galyon*, 366 B.R. 164, 165 (Bankr.W.D.Okla.2007).

We disagree with *Skaggs*, because as the court in *In re Nockerts* pointed out, the *Skaggs* exercise in statutory analysis actually compels the opposite conclusion. *See In re Nockerts*, 357 B.R. 497, 502 (Bankr. E.D.Wis.2006). When the statute discusses bankruptcy schedules, the schedules are described either by name or by reference to § 521, or the reference to the bankruptcy schedules is otherwise obvious.[4] *Id.* When the statute discusses scheduled payments, on the other hand, the bankruptcy schedules are not mentioned,[5] *id.*, and "[t]here is no bankruptcy schedule that requires the debtor to list 'all amounts contractually due to secured creditors in each month of the 60 months following the date of the petition.'" *In re Randle*, 358 B.R. 360, 365 (Bankr.N.D.Ill.2006), *aff'd*, *Randle v. Neary (In re Randle)*, 2007 WL 2668727 (N.D.Ill. Jul.20, 2007).

Furthermore, the "scheduled as" analysis is "a distinction without a difference." *In re Haar*, 360 B.R. 759, 764 (Bankr. N.D.Ohio 2007). Regardless of a debtor's intention to surrender property, the fact remains that payments are "contractually due." *Id.* at 764–65; *In re Randle*, 358 B.R. at 365; *In re Walker*, 2006 WL 1314125 at *4. And those amounts remain *contractually due*, regardless of whether said payments will actually be made, whether the debtor will reaffirm the debt, or whether the debtor will surrender the

property to the secured party. *In re Randle*, 358 B.R. at 362–63.

■ The phrase "scheduled as contractually due" is modified by the remaining statutory language, "in each of the 60 months following the date of the petition," which must be read consistently with the preceding language of the statute. *See In re Walker*, 2006 WL 1314125 at *3. Though the UST stresses the "forward-looking" nature of the term "following," we disagree that this somehow suggests that only those payments that will *actually* be made may be considered. *See In re Hayes*, 376 B.R. 55, 63 (Bankr.D.Mass.2007). Rather, we conclude that a "snap-shot" of the debtor's situation as of the petition date is a more appropriate approach, given the plain language of the statute. *Id.; In re Nockerts*, 357 B.R. at 504; *see also In re Guerriero*, 383 B.R. 841 (Bankr.D.Mass.2008). If Congress had intended otherwise, it could easily have said that the only deductible payments are those that the debtor intends to reaffirm. *See In re Hartwick*, 359 B.R. 16, 19 (Bankr.D.N.H.2007); *In re Walker*, 2006 WL 1314125 at *4. It is neither our function nor within our authority to infer such intent.[6]

■ The UST also argues that because Congress' purpose in creating the means test was to make certain "that those who can afford to repay some portion of their unsecured debts be required to do so,"

---

**4.** I.e., "§ 523(a)(3) (discharge of a debt that is 'neither listed nor scheduled under section 521(1)'); and § 554(c) (deemed abandonment of property 'scheduled under section 521(1)')." *In re Nockerts*, 357 B.R. at 502.

**5.** For example, "§ 524(k)(3)(H)(ii) (suggested reaffirmation agreement language 'describing the repayment schedule with the number, amount, and due dates or period of payments scheduled to repay the debts reaffirmed to the extent then known by the disclosing party'); and § 1326(a)(1)(B) (debtor shall make pre-confirmation payments 'scheduled in a lease

of personal property directly to the lessor')." *In re Nockerts*, 357 B.R. at 502.

**6.** In *Kibbe*, the Panel found that the term "projected disposable income," within the context of how much should a debtor pay in a Chapter 13 plan, is forward looking and based on reality. The application of the means test in Chapter 7 and Chapter 13 differs. *See In re Nockerts*, 357 B.R. at 504 (citing *In re Crittendon*, 2006 WL 2547102 (Bankr.M.D.N.C. Sept.1, 2006)).

allowing a debtor to deduct the expense of secured debt for property the debtor intends to surrender would frustrate that purpose. Courts may only delve into what Congress intended, however, where the statute is ambiguous, or where a plain reading would result in an absurd result or one demonstrably at odds with congressional intent. *See, e.g., Lamie v. United States,* 540 U.S. at 534, 124 S.Ct. 1023 ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition of the text is not absurd—is to enforce it according to its terms.' ") (quoting *Hartford Underwriters,* 530 U.S. at 6, 120 S.Ct. 1942; *Ron Pair,* 489 U.S. at 241, 109 S.Ct. 1026; *Caminetti,* 242 U.S. at 485, 37 S.Ct. 192); *see also Ron Pair,* 489 U.S. at 242, 109 S.Ct. 1026 ("The plain meaning of legislation should be conclusive except in the 'rare cases [where] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' ") (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *Ron Pair,* 489 U.S. at 241, 109 S.Ct. 1026. Here, our inquiry starts with the language of the statute, and because we fail to see any ambiguity, examining congressional intent is unnecessary, and in fact impermissible.

 Neither do we find that a literal application of the statute produces a result demonstrably at odds with the intention of its drafters. *See id.* To the contrary, "Congress' intent in enacting the [m]eans [t]est was to create a 'mechanical' formula for presuming abuse of Chapter 7." *In re Randle,* 358 B.R. at 363 (citing Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R.Rep. No. 109–31, pt. 1, at 553, 109th

Cong., 1st Sess. (2005)). In fact, Congress' intent in adding the means test was to create a more objective standard for establishing a presumption of abuse and to reduce judicial discretion in the process. *See id.*

Neither was the UST precluded from asking the court to consider facts external to the means test, i.e., she could have argued the totality of circumstances provision in § 707(b)(3), instead of relying solely on § 707(b)(2)(A), the (abbreviated) statutory presumption of abuse. *See In re Hartwick,* 359 B.R. at 21; *In re Singletary,* 354 B.R. at 465. Finally, the Panel does not feel that there will be an absurd result if the statute is applied as suggested above, and is satisfied that § 707(b)(2) fairly reflects Congress' intent to limit judicial discretion in the determination of whether a case is presumed abusive, rather than to obtain a factually accurate picture, on a case by case basis, of the debtor's financial condition. *See In re Hayes,* 376 B.R. at 64–65; *In re Haar,* 360 B.R. at 767; *In re Hartwick,* 359 B.R. at 21; *In re Randle,* 358 B.R. at 363–64. In calculating means test eligibility, allowing the deduction of secured payments due at the time of filing the petition, regardless of the debtor's ultimate intent regarding the secured property, or § 707 election regarding the security, is fully consistent with the mechanical test favored and (maybe unwittingly) enacted by Congress. *See In re Hayes,* 376 B.R. at 65.

## CONCLUSION

For the reasons discussed above, the Panel concludes that the bankruptcy court did not commit legal error when it denied the UST's motions to dismiss. Therefore, the rulings and orders appealed from are **AFFIRMED.**