**In re Michael P. ARSENAULT and Maria Terri Arsenault, Debtors.**

**No. 06–05452–MGW.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 3, 2007.

---

James C. McClendon, II, Weaver & McClendon PA, Lake Wales, FL, for debtor.

─────────

### *ORDER SUSTAINING TRUSTEE'S OBJECTION TO CONFIRMATION OF AMENDED CHAPTER 13 PLAN*

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

In determining a debtor's "projected disposable income" under section 1325(b)(1)(B) of the Bankruptcy Code,[1] the presumptive starting point is the disposable income number obtained from the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C"). The disposable income number on Form B22C is calculated using the historic six-month "current monthly income" as defined in section 101(10A).[2] The projected disposable income derived from that calculation may be rebutted, however, by evidence that Form B22C's historic snapshot does not form a reasonable basis for projecting income forward over the life of the Chapter 13 plan.

In this case, the preceding six-month historic income reflected in Form B22C does not take into account the Debtor husband's past or future annual bonuses. Therefore, the evidence overcomes the presumption created by Form B22C, and the Debtors' plan may not be confirmed because it does not commit all of the Debtors' "projected disposable income to be received in the applicable commitment period" to be paid to unsecured creditors over the term of the plan. 11 U.S.C. § 1325(b)(1)(B). Accordingly, the Chapter 13 Trustee's objection to confirmation is sustained.

### I. *Facts*

Michael P. Arsenault and Marie Terri Arsenault ("Debtors") filed a joint petition under Chapter 13 of the Bankruptcy Code on October 6, 2006. Along with the petition, the Debtors filed their Schedules, Form B22C, and their Chapter 13 plan.

According to Form B22C, the Debtors' annual income is $96,533.16, which exceeds the median income for a family of four in Florida. After completing the form's deduction calculations, the Debtors were left with monthly disposable income of $482.73.

At the section 341 meeting of creditors on November 14, 2006, the Debtors testified that the Debtor husband received an annual bonus. In 2005, the annual bonus totaled about $17,000, while the 2006 bonus was more than $23,000. Because the Debtors did not receive the 2006 annual bonus in the six months prior to the month in which their case was filed, they did not include this income on Form B22C. The Debtors also did not include the annual bonus in their calculation of income on Schedule I. On February 23, 2007, the Debtors filed an amended plan, which proposed to pay unsecured creditors an estimated dividend of 16 percent. It, too, excluded the annual bonus from the amounts available to pay unsecured creditors.

The chapter 13 trustee, Terry Smith ("Trustee"), objected to confirmation of

─────────

1. References to "section" shall be to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless otherwise specified.

2. Section 101(10A) defines "current monthly income" as the "average monthly income ... derived during the six-month period ..." preceding the date of the bankruptcy filing.

the plan, asserting that the Debtors' Chapter 13 plan violated section 1325(b)(1)(B) of the Bankruptcy Code because it did not provide that all of the Debtors' projected disposable income be paid over the applicable commitment period to the unsecured creditors. Specifically, the Trustee asserted that the Debtors' income was understated because it did not include the Debtor husband's annual bonus, which had averaged $20,000 in the last two years.

## II. *Jurisdiction*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157(b)(2)(L) and 1334. This is a core proceeding under 28 U.S.C. section 157(b)(2)(L).

## III. *Issue*

Whether the Debtors' "projected disposable income" should be determined solely by Form B22C's calculation of monthly disposable income, or whether the Court should take into account the Debtor husband's future annual bonuses to determine the Debtors' "projected disposable income to be received" during the term of the plan.

## IV. *Conclusions of Law*

A. *Projected Disposable Income—Section 1325(b)(1)(B)*

■ This case hinges on the interpretation of "projected disposable income" as used in section 1325(b)(1)(B). Section 1325(b)(1)(B) provides as follows:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan

. . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Thus, section 1325(b)(1)(B) requires debtors to use all of their "projected disposable income to be received" during the life of the plan to pay their unsecured creditors. Section 1325(b)(1)(B) is immediately followed by section 1325(b)(2), which states in pertinent part, "[f]or purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor ... less amounts reasonably necessary to be expended...."

"Current monthly income" is defined in new section 101(10A), which was added by the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 ("BAPCPA"), as a debtor's average monthly income for the six-month period preceding bankruptcy. Therefore, current monthly income—and in turn disposable income under section 1325(b)(2)—is simply a compilation of a debtor's historical income data. After current monthly income is computed, above-median-income debtors must subtract reasonably necessary expenditures calculated in accordance with Bankruptcy Code section 707(b)(2), and the total yields a debtor's disposable income.

The Trustee argues that the word "projected" in section 1325(b)(1)(B) modifies the term "disposable income" and thus mandates that the Court look forward to the income the Debtors are reasonably anticipated to receive over the five-year applicable commitment period of their plan, which, in this case, would include the Debtor husband's expected annual bonuses.

The Debtors, on the other hand, argue that they need only pay their disposable income as calculated on Form B22C. The Debtors contend, in essence, that their disposable income calculated in the six

months prior to the petition date is a fixed determination of their obligations during the life of the plan regardless of any changes in circumstance, such as the receipt of future annual bonuses.

Since the passage of BAPCPA, courts have grappled with the issue of whether the new definition of current monthly income is meant to limit the amount of a debtor's projected disposable income. In general, two lines of cases dealing with this issue have emerged.

One line of cases,[3] typified by *In re Alexander*, 344 B.R. 742 (Bankr.E.D.N.C. 2006), holds that disposable income means currently monthly income as defined in section 101(10A) and that disposable income is the same as projected disposable income. The determination of a debtor's projected disposable income is, therefore, basically a mechanical test using historic income data. *See id.* at 749 (stating that "in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math.").

The second line of cases,[4] typified by *In re Hardacre*, 338 B.R. 718 (Bankr. N.D.Tex.2006), stands for the proposition that the word "projected," to be given meaning, must modify disposable income such that the term "disposable income" in section 1325(b)(2) is not the same as the term "projected disposable income" in section 1325(b)(1)(B). Projected disposable income, therefore, "must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income." *Id.* at 722.

There is one case squarely on point with this case, and it follows the *Hardacre* line of cases. In *In re Foster*, 2006 WL 2621080 (Bankr.N.D.Ind. Sept.11, 2006), the court addressed the issue of "the debtors' failure to include annual bonuses in their Plan." *Id.* at *1. The trustee objected to confirmation of the proposed plan on the ground that "the requirement of 11 U.S.C. § 1325(b)(1)(B) was not met because the debtors' projected disposable income did not include the annual bonus." *Id.* at *2. Relying on *Hardacre* and its progeny, the court sustained the trustee's objection and determined that the proper calculation of projected disposable income must take into account annual bonuses received in the past and anticipated in the future. *Id.* at *8.

■ After much consideration, this Court agrees with *Foster* and finds that the better-reasoned line of cases on this narrow issue is the *Hardacre* line of cases. Two tenets of statutory construction support this ruling. First, a court should give meaning and effect, whenever possible, to every word of a statute, *United States v. Menasche*, 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955), "and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous." *In re Kibbe*, 361 B.R. 302, 313 (1st Cir. BAP 2007) (quoting *Lopez–Soto v. Hawayek*, 175 F.3d 170, 174 (1st Cir.1999)). Therefore, the Court should give meaning to the word "projected" in section 1325(b)(1)(B); to disregard it would deprive the word of any

---

**3.** *See, e.g., In re Miller*, 361 B.R. 224 (Bankr. N.D.Ala.2007); *In re McGillis*, 370 B.R. 720, 2007 WL 1549071 (Bankr.W.D.Mich. May 15, 2007); *In re Kolb*, 366 B.R. 802 (Bankr. S.D.Ohio 2007); *In re Hanks*, 362 B.R. 494 (Bankr.D.Utah 2007); *In re Tranmer*, 355 B.R. 234 (Bankr.D.Mont.2006).

**4.** *See, e.g., In re Kibbe*, 361 B.R. 302 (1st Cir. BAP 2007); *In re LaPlana*, 363 B.R. 259 (Bankr.M.D.Fla.2007); *In re Lanning*, 2007 WL 1451999 (Bankr.D.Kan. May 15, 2007); *In re Watson*, 366 B.R. 523 (Bankr.D.Md. 2007); *In re Jass*, 340 B.R. 411 (Bankr. D.Utah 2006).

significant meaning and effect, rendering "projected" superfluous.

The meaning of the term "projected" cannot be found in the Bankruptcy Code. It is, therefore, appropriate to look to the word's ordinary meaning. *In re Devilliers,* 358 B.R. 849, 858 (Bankr.E.D.La.2007) (citing *Rousey v. Jacoway,* 544 U.S. 320, 330, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005)). "Projected" is defined as "to plan, figure, or estimate for the future." *Merriam–Webster's Collegiate Dictionary* 932 (10th ed.1999). *See also In re Jass,* 340 B.R. 411, 415 (Bankr.D.Utah 2006) (stating that "[t]he word 'projected' means '[t]o calculate, estimate, or predict (something in the future), based on present data or trends.'" (citing *The Am. Heritage College Dictionary* 1115 (4th ed.2002)). In this respect, the ordinary meaning of "projected" lends further support to a forward-looking interpretation of section 1325(b)(1)(B) and the conclusion that the Court should consider not only the Debtors' historical finances, but it should also consider what the Debtors expect to receive in the course of the applicable commitment period.

■ The second tenet of statutory construction is that "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (quoting *Chicago v. Environmental Defense Fund,* 511 U.S. 328, 338, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994)). Congress chose to use the word "projected" to modify "disposable income" in section 1325(b)(1)(B), indicating its intent to distinguish "projected disposable income" from the phrase "disposable income" in section 1325(b)(2). *See, e.g., In re Hardacre,* 338 B.R. at 723.

The Court also agrees with *Hardacre* in that the reference to "to be received" in section 1325(b)(1)(B) lends further support to the conclusion that "projected" as used in that section is a forward-looking term. *Id.* Additionally, "projected disposable income" is tied to the applicable commitment period, which begins on the date of the first payment to general unsecured creditors following confirmation, not to the date of the petition. Projected disposable income, therefore, is the future income debtors are required to pay over the duration of the plan.

■ Inasmuch that the forward-looking interpretation of "projected disposable income" and the backward-looking definition of "disposable income" create any ambiguity, it is well settled that the court may look "beyond the naked text for guidance" and consider legislative intent. *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 454–455, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989). Although the legislative record on this particular statute is not illuminating, *In re Jass,* 340 B.R. at 416, it is clear that BAPCPA's reforms were intended "'to ensure that debtors repay creditors the maximum they can afford.'" *In re Zimmerman,* 2007 WL 295452, at *6 (Bankr. N.D.Ohio Jan.29, 2007) (citing H.R.Rep. No. 109–31, Pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89)).

In addition, rigid adherence to a debtor's pre-petition income history would produce results at odds with both Congressional intent and common sense. For example, if a debtor's pre-petition income is higher than his or her post-petition income, the debtor may be forced into a plan doomed to fail. On the other hand, if the debtor's pre-petition income is lower than his or her post-petition income, it could lead to a windfall for the debtor.

It should also be noted that this interpretation does not render section 101(10A)

irrelevant. To the contrary, section 101(10A) provides the source of payment and excludes certain income, such as social security and child support. It also provides a starting point for making the projection required by section 1325(b)(1)(B).

This construction also gives effect and meaning to sections 521(a)(1)(B)(vi) and 521(f), which respectively require debtors to file post-petition financial information and annual income tax returns. It only makes sense to require debtors to comply with these obligations if the debtors' projected disposable income is tied to income earned in the future. *See In re Davis,* 348 B.R. 449, 458 (Bankr.E.D.Mich.2006) (stating that "[i]f a debtor's only responsibility is to pay the amount determined by an arithmetic formula under 1325(b)(1)(B) based upon the debtor's current monthly income and her disposable income as calculated by that section of the Bankruptcy Code on the confirmation date, then what purpose is served by requiring that debtor to also disclose any reasonably anticipated increase in income or expenditures in the 12 months following the period of the debtor's petition?").

Accordingly, the Court finds that the income component of projected disposable income as set forth in section 1325(b)(1)(B) is the anticipated income of the Debtors during the applicable commitment period, including future annual bonuses.

## B. *Expenses—Section 707(b)(2)*

■ This opinion has dealt with the issue of whether a debtor's disposable income—as calculated in Form B22C utilizing the six-month historic current monthly income as defined in section 101(10A)—is the same as "projected disposable income" for purposes of section 1325(b)(1)(B). As set forth above, it is the Court's conclusion that Form B22C is the presumptive starting point for making that determination and that reasonably anticipated additional income should be included in calculating the debtor's projected disposable income.

Of course, for above-median-income debtors, Form B22C also is used to calculate the expenses that must be deducted from current monthly income to arrive at the amount available to pay unsecured creditors under the debtors' Chapter 13 plans. It may be inferred that a similar analysis would also result in this court utilizing Schedule J in determining the expenses to be deducted from a debtor's income to arrive at the amount left over as projected disposable income to fund a Chapter 13 plan's payments to unsecured creditors. In fact, it appears from a review of the cases, that courts generally either follow the Form B22C calculations or alternatively, apply the numbers set forth in Schedules I and J, in deriving both income and expenses for purposes of calculating projected disposable income.[5]

---

5. *Compare Miller,* 361 B.R. at 234 (finding Form B22C dispositive in calculating above-median-income debtor's projected disposable income); *In re Kolb,* 366 B.R. at 817–818 (stating that "the plain meaning of 1325(b)(2) and 1325(b)(1)(B) demands recourse to pre-petition income (as adjusted by the calculation of CMI), minus the allowed expenses of 707(b)(2)(A), as the best estimate for a debtor's future income and expenses."); *Hanks,* 362 B.R. at 502 (concluding that "Form B22C is determinative of the return to general unsecured creditors for above-median income debtors unless 'special circumstances' can be

shown under § 707(b)(2)(B)"); *Alexander,* 344 B.R. at 747 (stating that section 1325(b)(2) and (3) "plainly set forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income under the new law.") *with Watson,* 366 B.R. at 529 (holding disposable income calculated on Form B22C should be adjusted based on projected earnings and projected reasonably necessary expenses); *In re Upton,* 363 B.R. 528, 532 (Bankr.S.D. Ohio 2007) (using Schedules I and J to determine projected disposable

Contrary to the trend of the cases cited above, it is the view of this Court that the reasons for looking beyond the calculations set forth in Form B22C for calculating income have no applicability to the calculation of expenses. In determining expenses for above-median debtors, courts must deal with a different subsection: section 1325(b)(3). Thus, the calculations for above-median-income debtors must be done under Form B22C without resort to Schedule J.

Section 1325(b)(3) states that for above-median income debtors the "[a]mounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), *shall be determined* in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . ." (emphasis added). Here, there is no ambiguity at all; it is clear that Congress, on the deduction side, meant to take away all judicial discretion in the specific deduction areas set forth in section 707(b)(2)(A) and (B) and in those areas in which the Internal Revenue Service ("IRS") standards apply. As discussed in *In re Barr*, 341 B.R. 181, 185 (Bankr.M.D.N.C.2006), "[t]he use of 'shall' in section 1325(b)(3) is mandatory and leaves no decisions with respect to the expenses and deductions that are to be deducted in arriving at disposable income." Moreover, the legislative history indicates that Congress knew that new section 1325(b)(3)'s substitution of IRS standards for the debtor's actual expenses substantially changed the calcu-

lation of disposable income. *See id.* (citing Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R.Rep. No. 109–31, pt. 1., p. 553, 109th Cong., 1st Sess. (2005)).

The ambiguity seen between section 1325(b)(1)(B) and section 1325(b)(2) does not exist here. Rather, just as the IRS standards apply for the calculation of expenses for means test purposes for above-median-income debtors, section 1325(b)(3) mandates that the exact same standards are to apply for purposes of calculating projected disposable income under section 1325(b)(1)(B).

Accordingly, the Court finds that it has no discretion in determining what expenses are reasonably necessary for a debtor's support, but must strictly follow section 1325(b)(3)'s directive that expenses be determined under section 707(b)(2) when calculating disposable income for above-median-income debtors.[6]

## V. *Conclusion*

Form B22C will be the basis for projected disposable income unless there is evidence that simply using the historic six-month snapshot does not form a reasonable basis for projecting income forward. In this case, the evidence shows that the historic income data is not reasonable because the Debtors expect to receive annual bonuses during the five-year applicable commitment period. Therefore, the Debtors' projected disposable income must in-

income); *In re Edmunds,* 350 B.R. 636, 647 & 649 (Bankr.D.S.C.2006) (finding courts may consider actual income and expenses on schedules I and J and other evidence during confirmation); *Jass,* 340 B.R. at 418 (stating that "[i]f the Court finds adequate evidence to rebut the presumption in favor of Form B22C, the Court will allow the debtor to use a projected budget in the form of Schedules I and J to determine the debtor's 'projected disposable income.' ").

**6.** This does not mean that the plan is fixed for its duration in terms of expenses based on those calculated under B22C as of the date of the petition. The plan is still subject to being modified under section 1329 to increase or reduce payments if circumstances change resulting in different expense calculations under section 707(b)(2).

clude their anticipated annual bonuses. Accordingly, it is

ORDERED that the Trustee's Objection is sustained.