**In re Sabrina HUGHEY, Debtor.**

**No. 07–12721–BKC–PHG.**

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Dec. 14, 2007.

Norman L. Schroeder II, Esq., Lake Worth, FL, for Debtor.

### ORDER OVERRULING OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

PAUL G. HYMAN, Chief Judge.

**THIS MATTER** came before the Court for hearing on October 24, 2007, upon Bank of America/FIA Card Services', formerly MBNA by eCAST Settlement Corporation as its agent,("Ecast" or "Creditor"), *Objection to Confirmation of Chapter 13 Plan* (C.P.# 14), and *Supplement to Objection to Confirmation of Chapter 13 Plan* (C.P.# 32)(collectively, "Objection"). The Creditor objects to confirmation of Sabrina Hughey's ("Debtor") proposed Chapter 13 Plan (C.P.# 5) ("Plan")[1] on the basis that it fails to include all of the Debtor's projected disposable income as required by 11 U.S.C. § 1325(b)(1)(B).

### BACKGROUND

The facts of this matter are undisputed, and the following background information is based upon the parties' Joint Stipulation of Facts. The Debtor filed for Chapter 13 relief on April 18, 2007. The Debtor's Official Form B22C: *Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income* ("Form B22C") shows that the Debtor and her non-filing spouse's Current Monthly Income ("CMI"), as defined in 11 U.S.C. § 101(10A), is $4,136.00. Their annualized CMI is $49,632.00. At the time of filing, the applicable median annual income for a family of two people residing in Florida was $46,914.00. Thus, the Debtor is an above median income

debtor and the applicable commitment period for the Debtor's Chapter 13 plan is five years pursuant to 11 U.S.C. § 1325(b)(4). As indicated on Form B22C, the Debtor's monthly disposable income is $35.40 pursuant to 11 U.S.C. § 1325(b)(2).

It is important to note that Debtor's Plan is based upon Debtor's Schedules "I" and "J" and that it proposes to pay creditors $260.00 per month for sixty months instead of Debtors' Form B22C disposable income of $35.40 per month for sixty months. Debtor's Schedule "I" reports monthly net income of $3,401.40 and monthly gross income of $4,440.00, an amount that is higher than Debtor's CMI of $4,136.00 determined pursuant to § 101(10A). Debtor's Schedule "J" reports monthly expenses of $3,131.00 including a monthly car loan payment of $342.00 to American Honda Finance ("Honda") for Debtor's 2003 Honda Civic automobile. As of the petition date, the amount owed to Honda, as evidenced by Proof of Claim No. 5, was $5,733.92 with approximately seventeen monthly payments remaining ("Honda Loan"). The Debtor is current on the Honda Loan and is making payments on Honda's secured claim outside of the Plan.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

The Creditor, as the holder of an allowed unsecured claim who is objecting to confirmation, argues that pursuant to 11

---

1. The Debtor filed a Chapter 13 Plan on April 18, 2007 (C.P.# 5) and a First Amended Chapter 13 Plan on June 26, 2007 (C.P.# 15). The Court discerns no difference between the two plans and indeed both documents are signed by the Debtor on the same day, April 16, 2007.

U.S.C. § 1325(b)(1), the Court may not approve Debtor's Plan unless the Plan provides that all of the Debtor's projected disposable income to be received in the applicable commitment period is applied to make payments to unsecured creditors. 11 U.S.C. § 1325(b)(1). The Creditor maintains that the Debtor's projected disposable income will increase by $342.00 per month after month seventeen when the Honda Loan is paid off. The Creditor further argues that in order for the Plan to meet the confirmation requirement—that all of the Debtor's projected disposable income to be received will be paid to unsecured creditors—the Plan must include a step-up in Debtor's monthly Plan payments after the Honda Loan is paid off.

■ Adjudication of the Creditor's Objection requires the Court to determine *what* constitutes the Debtor's "projected disposable income" so that the Court can determine whether the Plan provides that *all* of it will be applied to make payments to unsecured creditors. While the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") does not define "projected disposable income", it does define "disposable income" in § 1325(b)(2) which states in pertinent part:

> the term "disposable income" means current monthly income received by the debtor ... less amounts reasonably necessary to be expended—

11 U.S.C. § 1325(b)(2).

Thus disposable income has two components, current monthly income and amounts reasonably necessary to be expended. Current monthly income, a defined term, is an historical figure based on the Debtor's average monthly income re-

ceived during the 6–month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case. In the case of an above median income debtor, amounts reasonably necessary to be expended are expenses determined in accordance with § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3). Section 707(b)(2)(A) provides the means test formula to determine whether it would be presumptively abusive to grant a particular debtor relief under Chapter 7.[2] Thus, the expense amounts used to determine an above median income debtor's disposable income are the same expense amounts used for the means test. Under the means test, the majority of an above median income debtor's expenses are determined using Internal Revenue Service national and local standards plus the debtor's actual expenses for certain specified categories. Hence, in the case of an above median income debtor, disposable income is based on current monthly income, which is an average of six months' pre-petition income received by the debtor, from which expenses are deducted using predetermined standard amounts for most expenses, actual amounts for other specified expenses, and future payments on secured claims contractually due over sixty months. *See In re Henebury,* 361 B.R. 595, 601–604 (Bankr.S.D.Fla.2007)(explaining in detail the calculations required to perform the means test).

While BAPCPA defines "disposable income," the absence of a definition of "projected disposable income" has compelled numerous courts to grapple with its meaning in different contexts.[3] *See In re Bris-*

---

**2.** In the absence of special circumstances, BAPCPA creates a presumption that it is abusive to grant Chapter 7 relief to an above median income debtor if under the means test the Debtor has sufficient disposable income

over sixty months to pay the greater of 25% of the debtor's nonpriority unsecured claims or $6,000.

**3.** Courts have been presented with the issue of what constitutes projected disposable in-

*coe,* 374 B.R. 1 (Bankr.D.D.C.2007)(surveying cases interpreting projected disposable income.); *see also In re Swan,* 368 B.R. 12 (Bankr.N.D.Cal.2007). "Two competing interpretations have emerged, and interestingly, both claim their opposite conclusions are supported by the plain meaning of the relevant statutes." *In re Lanning,* 2007 WL 1451999, *4 (Bankr.D.Kan.2007).

The first camp holds that the term "projected" simply means that the "currently monthly income" figure from B22C must be multiplied (projected out) by the number of months of the proposed plan. This interpretation construes "projected" simply as a multiplier for the term "disposable income."

\* \* \*

The second camp holds that, because the debtor's disposable income must be used to fund the plan, the term "projected" was intended to signal a reexamination of income potential over the life of the plan. The effective consequence of this latter construction is that the terms "disposable income" and "projected disposable income" have very separate meanings.

*In re Kibbe,* 361 B.R. 302, 308 (1st Cir. BAP 2007) (internal citations omitted) (discussing in the first camp, *In re Barr,* 341 B.R. 181 (Bankr.M.D.N.C.2006) and *In re*

*Alexander,* 344 B.R. 742 (Bankr.E.D.N.C. 2006); but siding with the second camp as typified by *In re Hardacre,* 338 B.R. 718 (Bankr.N.D.Tex.2006), *In re Jass,* 340 B.R. 411 (Bankr.D.Utah 2006)).

The *Kibbe* court affirmed the bankruptcy court's ruling that "projected disposable income as set forth in § 1325(b)(1)(B) must be grounded in the debtor's anticipated income." *Id.* at 312. "Insofar as the term disposable income' demands a look back and the term 'projected' requires a look forward, the language is irreconcilable. One must give way to the other, or the courts must fashion an interpretation that gives the greatest meaning to both." *Id.* The *Kibbe* court determined that Form B22C is the starting point for determining projected disposable income. This Court agrees. To the extent that a debtor's actual anticipated future income is different than a debtor's historical current monthly income, actual anticipated future income should be used to determine a debtor's payments in order to ensure that a debtor's Chapter 13 plan is feasible and capable of completion by the debtor. *In re Arsenault,* 370 B.R. 845, 850 (Bankr. M.D.Fla.2007) "[R]igid adherence to a debtor's pre-petition income history would produce results at odds with both Congressional intent and common sense. For

come in varying contexts. For example, courts have had to determine whether an above median income debtor's Form B22C expenses may include transportation ownership expense if the debtor owns the vehicle outright and makes no car payments, *see e.g., In re Swan,* 368 B.R. 12 (Bankr.N.D.Cal.2007) (holding that debtor is entitled to deduction of transportation ownership expense regardless of whether or not debtor had actual car payment expense); *In re Barrett,* 371 B.R. 855 (Bankr.S.D.Ill.2007)(holding that debtor may deduct standard vehicle ownership expense even if her vehicle is owned free and clear of liens); whether an above median income debtor's Form B22C expenses may include

mortgage/rental expense if the debtor lives with family and does not actually incur such expense, *see e.g., In re Morgan,* 374 B.R. 353 (Bankr.S.D.Fla.2007) (holding that debtor is allowed to take the local standard deduction for mortgage/rental expense notwithstanding the fact that debtor pays no mortgage payment or rental obligation); and whether projected disposable income includes future anticipated income or is limited to historical current monthly income reported on Form B22C, *see e.g., In re Arsenault,* 370 B.R. 845 (Bankr.M.D.Fla.2007) (holding that projected disposable income is a forward looking concept that includes future anticipated income).

example, if a debtor's pre-petition income is higher than his or her post-petition income, the debtor may be forced into a plan doomed to fail. On the other hand, if the debtor's pre-petition income is lower than his or her post-petition income, it could lead to a windfall for the debtor." *Id.But cf., In re Nance,* 371 B.R. 358, 367 (Bankr.S.D.Ill.2007)(adopting strict mathematical formula multiplying Form B22C disposable income based upon CMI and standard expenses to arrive at projected disposable income, and nothing that "[u]nintended, impractical results are for Congress to address by amending the statute.").

In this case, had the Debtor used a strict mathematical formula that simply multiplied or projected her disposable income, her payments under the Plan would have been only $35.40 per month for sixty months. Instead, the Debtor used her Schedule "I" income, which is higher than her CMI, to determine the income side of the equation, from which she deducted her Schedule "J" expenses, rather than the expenses indicated on her Form B22C means test, to arrive at projected disposable income. Thus, the Plan provides for sixty payments of $260.00 per month.

█ Nevertheless, the Creditor maintains that upon termination of the Honda Loan, the Debtor's projected disposable income will necessarily increase by $342.00 per month and that this increase should be committed to the Plan for payments to unsecured creditors. The Court does not agree. The Creditor makes the common sense argument that a reduction in expenses is equivalent to an increase in income. However under BAPCPA, in the case of an above median income debtor, a reduction in expenses is not equivalent to an increase in income. Counterintuitive as it may seem, these concepts are not interchangeable. In this Court's view, the income side of the projected disposable income calculation is an elastic concept that incorporates changes up or down in a Debtor's future income. *In re Arsenault,* 370 B.R. at 850 (determining that projected disposable income is a forward looking concept based upon BAPCPA statutory construction). However, § 1325(b)(3)instructs that expenses for an above median income debtor are fixed and *"shall be determined* in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . .". 11 U.S.C. § 1325(b)(3) (emphasis added). "[I]t is clear that Congress, on the deduction side, meant to take away all judicial discretion in the specific deduction areas set forth in section 707(b)(2)(A) and (B) and in those areas in which the Internal Revenue Service standards apply." *Id.* In determining the Debtor's projected disposable income, § 1325(b)(3) mandates use of applicable expense standards as set forth in § 707(b)(2).[4] These are the same expenses that an above median income debtor must use for completing the Form B22C means test.

4. Including future anticipated income, whether higher or lower, in the calculation of projected disposable income increases the probability that the Debtor will be able to complete a feasible plan and at the same time repay creditors the maximum amount they can afford. However "the reasons for looking beyond the calculations set forth in Form B22C for calculating income have no applicability to the calculation of expenses." *Arsenault,* 370 B.R. at 853. The policy rationales advanced to explain the mandate that above median income debtors use fixed national and local standard expenses applicable to a debtor's family size and geographic location include judicial efficiency, reducing administrative complexity, removing judicial discretion, relieving courts of the obligation to make subjective judgments regarding reasonable expenses, ensuring that debtors repay the maximum they can afford, and preventing abuse by above median income Chapter 13 debtors.

■ As stated above, the Court agrees with the cases that hold that Form B22C is a starting point, and that anticipated future income should be included, when determining projected disposable income. *See e.g., Kibbe,* 361 B.R. 302; *Lanning,* 2007 WL 1451999; *Arsenault,* 370 B.R. 845. Under the facts of this case, the above median income Debtor's projected disposable income may properly be calculated using Schedule "I" on the income side of the equation and subtracting the expenses reported on Debtor's Form B22C as the amounts reasonably necessary to be expended. However, the Court notes that it is not always appropriate to rely on Schedule "I" to determine the income side of the equation because "[t]he income required to be reported on Schedule 'I' is different from 'current monthly income' as defined in 11 U.S.C. § 101(10A)." *In re Briscoe,* 374 B.R. at 19 n. 20–21. "Current monthly income" excludes social security benefits, payments to victims of war crimes, crimes against humanity, and terrorism. 11 U.S.C. § 101(10A)(B). Therefore, it would be inappropriate to rely entirely on Schedule "I" to determine the income side of a debtor's projected disposable income if Schedule "I" included income derived from a source that 11 U.S.C. § 101(10A)(B) specifically excludes. *Id.* Nevertheless, when current monthly income does not accurately reflect a debtor's actual and anticipated future income, Schedule "I" becomes relevant. Schedule "I" is especially helpful in determining anticipated future income because it asks the debtor to describe any increase of decrease in income reasonably anticipated to occur within the year following filing of Schedule "I".

■ As stipulated by the parties here, the Debtor's gross income on Schedule "I" is $4,440.00 and there is no indication that Debtor's Schedule "I" income includes payments from any sources excluded from current monthly income under § 101(10A)(B). The expenses reasonably necessary to be expended pursuant to Debtor's Form B22C, Line 57 total $4,100.60. The difference of $339.40 is the Debtor's monthly projected disposable income that must be committed to the Plan during the applicable commitment period.[5] Under BAPCPA, which mandates the use of fixed standard transportation expenses, the above median income Debtor's projected monthly disposable income is unaffected by the fact that the Debtor's actual monthly expenses may be reduced after the Honda Loan is paid off. In addition, the Court notes that Form B22C factors in the early payoff of the Honda Loan by calculating the amounts contractually due on the Honda Loan in the sixty months following commencement of the case and dividing by sixty. Creditor's Objection based on the argument that confirmation requires a step-up in Plan payments when the Honda Loan is paid off is thus overruled. *Compare In re McLain,* 378 B.R. 39, 42–43 (Bankr.N.D.N.Y.2007) (also determining that plan confirmation does not require stepped up payments after car loan was paid off. However, the court's analysis used a strict mathematical formula that multiplied Form B22C disposable income based upon CMI to arrive at projected disposable income and concluded that "the apparent liberation of debtor monies by the proposed retirement of automotive loans during the life of the plan is not an impediment to confirmation ..."); *In re Barrett,* 371 B.R. 855, 860 (Bankr.S.D.Ill. 2007) (refusing to look beyond Form

5. The Court notes that the Plan remains subject to modification under section 1329 if there is a change in either the Debtor's income or the Debtor's circumstances that would result in different expense calculations under section 707(b)(2).

B22C's CMI and expenses to calculate projected disposable income and ruling that confirmation did not require step-up in plan payments after car loan was paid off).

## CONCLUSION

For the reasons stated above, the Court finds that confirmation does not require Debtor's Chapter 13 Plan to provide for increased payments when the Honda Loan is paid off. In this case, the above median income Debtor's projected disposable income is properly calculated using Debtor's Schedule "I" income from which deductions for amounts reasonably necessary to be incurred are the Debtor's expenses pursuant to Line 57 of Debtor's Form B22C, rather than expenses as reported on Debtor's Schedule "J". Thus, the Debtor's Chapter 13 Plan must provide for payments of $339.40 per month for sixty months.

## ORDER

The Court having reviewed the submissions of the parties, the applicable law, having heard the argument of counsel, and being otherwise fully advised in the premises does hereby **ORDER AND ADJUDGE** that

1.  Creditor's Objection stating that confirmation requires a step-up in Plan payments when the Honda Loan is paid off is **OVERRULED.**

2.  The Debtor shall have ten days from entry of this order to file a Second Amended Chapter 13 Plan that commits all of the Debtor's projected disposable income as that term is interpreted herein.