In re Carlton Lovette RAULERSON
and Daphne Allen Raulerson,
Debtors.

No. 08–705–3F3.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 9, 2008.

E. Warren Parker, Jr., Parker & Dufresne, P.A., Jacksonville, FL, for Debtors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court for a confirmation hearing on Debtors' Amended Chapter 13 Plan and the Chapter 13 Trustee's Objection thereto. The Court conducted a hearing on the matter on May 13, 2008. The Court directed the parties to submit memoranda in support of their respective positions. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On February 11, 2008 Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Along with their petition, Debtors filed a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income indicating they have an above median income. On March 26, 2008 the Chapter 13 Trustee filed an objection to confirmation of Debtors' Chapter 13 Plan. On April 14, 2008 Debtors filed an amended Chapter 13 Plan. On April 15, 2008 the Court conducted an initial confirmation hearing which was continued until May 13, 2008. At the continued confirmation hearing, the Court heard argument of counsel for Debtors and the Trustee.

At the May 13, 2008 hearing the Trustee submitted into evidence the B22C prepared by Debtors (the "Debtors' B22C") and a B22C prepared by the Trustee (the "Trustee's B22C"). Debtors' B22C indicates on Line 30 a monthly tax liability of $2,094.87, on Line 27A a transportation and vehicle operation expense of $762.00, and on Line 59 a monthly disposable income of negative $168.13. The Trustee's B22C indicates on Line 30 a monthly tax liability of $1,736.27, on Line 27A a transportation and vehicle operation expense of $362.00, and on Line 59 a monthly disposable income of $604.20. Debtors concede that the calculation of $1,736.27 on Line 30 of the Trustee's B22C is correct. Additionally, the Court finds that the Trustee's calculation of $362.00 on Line 27A is correct.[1] Debtors' Amended Chapter 13 Plan proposes to pay the unsecured creditors $17.98 in month 60 of the Plan. The parties stipulated at the hearing that the deductions from Debtors' income, as reflected in

---

**1.** The Trustee's calculation was based upon the allowed expense under the local standard provided by the Internal Revenue Service for two vehicles.

Schedules I and J, are their actual monthly expenses from February 11, 2008, the date of the filing of the case, through May 13, 2008, the date of the confirmation hearing.

### CONCLUSIONS OF LAW

Prior to the passage of BAPCPA the determination of a debtor's disposable income was straightforward. Upon an objection to confirmation that a debtor was not using all of his or her disposable income to fund a plan, a court looked to the debtor's monthly income and expenses on Schedules I and J. The determination of whether a debtor's Schedule J expenses were reasonably necessary for the support of a debtor or a debtor's dependents was within the discretion of the court.

The passage of BAPCA changed the landscape of Chapter 13. Under BAPCPA, upon the trustee's or an unsecured creditor's objection to confirmation, a Chapter 13 plan must "provide[ ] that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan ... be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). Section 1325(b)(2) defines disposable income as "current monthly income ... received by the debtor ... less amounts reasonably necessary to be expended—(A)(i) for the maintenance or support of the debtor or the dependent of a debtor ..." "Current monthly income" ("CMI") is defined in § 101(10A) as "the average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income, derived during the 6–month period

[before the date of filing] and includes any amount paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor and the debtor's dependents ... but excludes [certain benefits and payments]." Section 1325(b)(3) provides that "amounts reasonably necessary to be expended" under § 1325(b)(2)(A) for an above median debtor [2] are determined in accordance with §§ 707(b)(2)(A) and (B).

The Trustee asserts that because they are above median, Debtors are required to use the means test and Form B22C to determine their projected disposable income. While the Trustee concedes that Debtors may reflect changes in the means test to show that their projected disposable income has substantially changed since the petition date, he asserts that Debtors should not be permitted to base their projected disposable income on Schedules I and J. The Trustee points out that Debtors have offered no evidence that their projected disposable income at the time of confirmation has substantially changed since the petition date. The Trustee asserts that using the expenses set forth in the Trustee's B22C, Debtors have projected monthly disposable income of $604.20.

Debtors argue that based upon the Court's ruling in *In re Holmes*, Case No. 07–4081–JAF, 2008 WL 4542900 (M.D.Fla. March 17, 2008) "it is the fabricated expenses reflected in the Means Test that are irrelevant in determining the debtors' projected disposable monthly income for the purpose of 11 U.S.C. § 1325(b)(1)(B)." Debtors argue that Debtors' actual expenses as reflected in their Schedules I and J rather than the amount on Line 59

---

**2.** An above median debtor is a debtor who has current monthly income, when multiplied by twelve which is greater than the highest median family income of the debtor's state for

a family with the same number of people as the debtor's. As the Court indicated, Debtors have an above median income.

of B22C should be used to determine their projected disposable income.

At least four Bankruptcy Appellate Panels, a Circuit Court of Appeals and numerous bankruptcy courts have addressed the issue of the meaning of "projected disposable income" as it relates to a debtor's income. A number of courts hold that the term "projected" was meant to require a re-examination of income over the life of a Chapter 13 plan giving "projected disposable income" and "disposable income" different meanings. *In re Lanning*, 380 B.R. 17, 24–25 (10th Cir.BAP2007)(using B22C as starting point in determining "projected disposable income" but requiring debtors who seek to deviate from B22C to present documentation similar to that required by § 707(b)(2)(B)(ii)); *In re Pak*, 378 B.R. 257, 268 (9th Cir.BAP2007) (noting that "disposable income" is starting point for determining "projected disposable income" "subject to adjustment, based on evidence, to reflect reality going forward."); *In re Kibbe*, 361 B.R. 302, 308 (1st Cir.BAP2007)(noting that where a debtor's current monthly income is "not true to the debtor's actual current income, courts should assume that Congress intended that they rely on what a debtor can realistically pay to creditors through his or her plan and not on any artificial measure."); *In re Purdy*, 373 B.R. 142, 152 (Bankr.N.D.Fla.2007)(noting that "a debtor's 'projected disposable income' as calculated by Form B22C, will be presumed accurate unless the debtor or trustee can show that the numbers contained in Form B22C do not reflect a fair projection of the debtor's budget into the future because the debtor has experienced a substantial change in circumstances."); *In re Arsenault*, 370 B.R. 845, 852 (Bankr.M.D.Fla. 2007) (noting that "projected" is a forward looking term and using B22C to determine projected disposable income unless evidence exists that B22C does not form a reasonable basis for projecting income forward); *In re LaPlana*, 363 B.R. 259, 266 (Bankr.M.D.Fla.2007)(noting that in cases in which historical reality does not match future reality "refusing to consider changes in circumstances and robotically relying on the debtor's known-inaccurate historical financial data is tantamount to ignoring the term 'projected' that Congress intentionally inserted to modify the term 'disposable income.' ").

A second line of cases holds that "disposable income" is the same as "projected disposable income" and that the determination of a debtor's projected disposable income is made by a mechanical application of Form B22C. *In re Kagenveama*, 541 F.3d 868, 2008 WL 2485570 (9th Cir. June 23, 2008); *In re Frederickson*, 375 B.R. 829, 835 (8th Cir.BAP2007); *In re Neclerio*, 393 B.R. 784, 2008 WL 3910982 (Bankr.S.D.Fla. August 20, 2008); *In re Alexander*, 344 B.R. 742 (Bankr.E.D.N.C. 2006).

 Upon a review of numerous decisions on the matter, the Court agrees with those courts which hold that the term "projected" was meant to require a re-examination of income over the life of a Chapter 13 plan giving "projected disposable income" and "disposable income" different meanings. As the court in *Arsenault* pointed out, "rigid adherence to a debtor's pre-petition income history would produce results at odds with both Congressional intent and common sense. For example, if a debtor's pre-petition income is higher than his or her post-petition income, the debtor may be forced into a plan doomed to fail. On the other hand, if the debtor's pre-petition income is lower than his or her post-petition income, it could lead to a windfall for the debtor." *Id.* at 850. Accordingly, the Court will use B22C as a starting point in determining the in-

come component of a debtor's "projected disposable income." A debtor who seeks to deviate therefrom on the basis that the B22C does not form a reasonable basis for projecting income forward must produce evidence to that effect.

 Courts also vary as to how they deal with the expense component of an above median debtor's "projected disposable income". It is clear that an above median debtor's expenses must be determined using Form B22C and the calculations set forth in §§ 707(a)(2)(A) and (B). What is the subject of debate among courts is whether, and if so, the extent to which courts may consider a debtor's Schedule J in determining a debtor's expenses. As the court in *Arsenault* pointed out, a review of the cases indicates that those courts which use the B22C calculations for the income prong of "projected disposable income" also use only B22C for the expense calculation, while courts that permit a resort to Schedule I to determine the income component of "projected disposable income" ordinarily use the figures set forth in Schedule J to determine the debtor's expenses. *Id.* at 851 (collecting cases). *Arsenault* rejects such an approach and holds that an above median debtor's expenses are determined by a mechanical application of B22C without resort to Schedule J. hi at 852 (noting that "Congress on the deduction side, meant to take away all judicial discretion in the specific deduction areas set forth in section 707(b)(2)(A) and (B) and in those areas in which the Internal Revenue Service stan-

dards apply."); *See also In re Edmondson,* 363 B.R. 212 (Bankr.D.N.M.2007) (holding that an above median debtor's expenses are specifically limited to the "artificial" figures contained in B22C with limited exceptions as provided in § 707(b)(2)(B)(i)). While the Court agrees that an above median debtor's expenses are to be determined by reference to a debtor's B22C instead of Schedule J, the Court agrees with the *Edmondson* court as to the application of the limited exception set forth in § 707(b)(2)(B)(i). To the extent that an above median debtor asserts that his or her expenses exceed those permitted by B22C, the Court will look to § 707(b)(2)(B)(i) to determine whether such expenses are permissible.[3] Section 707(b)(2)(B)(i) provides in pertinent part:

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses

---

3. In *Holmes* the Court rejected a strict mechanical calculation of Form B22C in determining a debtor's "projected disposable income." The issue before the Court in *Holmes* was whether a debtor was entitled to deduct from her disposable income a payment on a mortgage, which had been stripped down. The Court adopted the "future oriented" approach, which permits a debtor to deduct only those expenses which he reasonably expects to pay during the pendency of a Chapter 13 plan. The Court concluded that permitting a debtor to deduct an expense which was non-existent at the time of confirmation "goes against the very essence of Chapter 13." The Court's believes that its holding today is in harmony with *Holmes*.

**162**

or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

 While Debtors in the instant case assert that their expenses are greater than those permitted by B22C, they have not provided itemized documentation of their expenses or a detailed explanation of the special circumstances, which justify the expenses for which there is no reasonable alternative. Accordingly, because Debtors are not paying all of their projected disposable income to their unsecured creditors, the Court finds it appropriate to sustain the Trustee's objection and deny confirmation of Debtors' Amended Chapter 13 Plan.

### Conclusion

The term "projected" in § 1325(b)(1)(B) of the Bankruptcy Code was meant to require a re-examination of income over the life of a Chapter 13 plan giving "projected disposable income" and "disposable income" different meanings. Accordingly, the Court will use B22C as a starting point in determining the income component of a debtor's "projected disposable income." A debtor who seeks to deviate therefrom on the basis that the B22C does not form a reasonable basis for projecting income forward must produce evidence to that effect. To the extent that an above median debtor asserts that his or her expenses exceed those permitted by B22C, the Court will look to § 707(b)(2)(B)(i) to determine whether such expenses are permissible. While Debtors in the instant case assert that their expenses are greater than those permitted by B22C, they have not provided itemized documentation of their expenses or a detailed explanation of

the special circumstances, which justify the expenses for which there is no reasonable alternative. Accordingly, because Debtors are not paying all of their projected disposable income to their unsecured creditors, the Court finds it appropriate to sustain the Trustee's objection and deny confirmation of Debtors' Amended Chapter 13 Plan. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.